CITIZENS TRUST COMPANY and PEMISCOT COUNTY BANK, Appellants, v. A. C. TINDLE et al.

In Banc, December 22, 1917.

1. **PARTIES PLAINTIFF:** Suit on Bank Bond: Assignee. An assignee of all the assets, including choses in action, claims and demands, due or to become due the assignor, to be collected by the assignee and applied to the use of the assigned, is authorized to sue on a

bond given by an employee of the assignor as a guaranty of efficient service, since such assignment constituted the assignee the trustee of an express trust.

2. ——: ——: ——: **Misjoinder of Parties.** Nor did such assignment and statutory authority to sue preclude the assignee from joining the assignor as a party plaintiff in the action on the bond, as one "having an interest in the subject of the action."

3. **BANK: Assignment to Trust Company: Statute.** The statute (Sec. 1084, R. S. 1909) does not prohibit a bank from assigning its assets to a trust company to liquidate its affairs and effect its retirement from business. On the contrary, it encourages such course, as an appropriate agency for carrying out the purpose, in an expeditious and inexpensive way, beneficial to both creditors and stockholders.

4. ——: ——: ——: **Improper Plaintiff: Pleading.** To authorize the sureties on the bond of a cashier to interpose the defense that an assignment by a bank to a trust company for the purpose of liquidation was unlawful because the statute requires the Bank Commissioner to take charge of a bank in a "failing condition" and forbids such a bank to "make a voluntary general assignment," it develops upon them when sued on the bond to plead it. The point that a petition, alleging that the plaintiff trust company is the assignee of all the assets of the bank, shows on its face that such company is an improper plaintiff, cannot be sustained upon a demurrer thereto.

5. **BOND: Ambiguity: Aliunde Interpretation.** The bond given by a cashier of a bank for efficient service constitutes a contract, and as such is subject to the rules of interpretation applicable to other contracts. If it be ambiguous, the court will look, not merely to its terms, but to its subject-matter, the circumstances attending its making and the interpretation given it at the time by the parties themselves; but if it be not ambiguous, resort to these extraneous matters is not permitted, and being clear in its terms it will, as to accommodation sureties, be strictly construed.

6. ——: ——: **Obligation Against Mistakes But Not Against Peculations.** The bond of the cashier of a bank read that if he "shall well and faithfully perform all duties as such cashier" of said bank "the above named and undersigned sureties hereby agree to hold said bank harmless for any loss occasioned by any act of such officer until all of his accounts with such bank have been paid." *Held*, not to be ambiguous, and while not such a bond as is required by the statute, is neither meaningless nor unauthorized, nor preclusive of the taking of a statutory bond, but is an obligation against inadvertence or honest mistakes and as such is binding on the sureties, but it does not cover the cashier's

peculations and thefts; and the rules of construction, which require that as to accommodation sureties, a bond must be strictly construed and their liability limited to its exact words, forbid the insertion or elimination of words that would render it a statutory bond.

Appeal from Pemiscot Circuit Court.—*Hon. Frank Kelly,* Judge.

AFFIRMED.

*Shepard & Reeves* and *Oliver & Oliver* for appellants.

(1) Our statute provides that every action shall be prosecuted in the name of the real party in interest. The Citizens Trust Company, as assignee, has an interest in the bond. Sec. 1729, R. S. 1909; Waterman v. Frank, 21 Mo. 111. (2) There is nothing in section 1084 that prevented the Pemicost County Bank from doing what it did do, in assigning certain assets and choses in action to its co-plaintiff, the Citizens Trust Company. Section 1084 prohibits a bank that is "receiving deposits" from making a "general assignment of its business and affairs." There is nothing in this petition that can be tortured into an averment that at the time the Pemiscot County Bank assigned certain assets and choses in action to its co-plaintiff, it was "receiving deposits." Nothing of that kind appears anywhere in this petition. The prohibition in the statute is leveled against a bank "receiving deposits" from making a general assignment of its business and affairs. No such state of facts is pleaded in this petition. On the contrary, the petition, in the most direct and positive way, states the purpose of the assignment —to liquidate. Therefore the Citizens Trust Company had the right under the circumstances detailed in this petition, to take and hold by assignment the bond executed by these appellants and to enforce its payment in this suit. (3) The "general assignment" mentioned in Section 1084 is the assignment mentioned in Chapter 8, Section 896 et seq., R. S. 1909. A bank "receiving

deposits'' is prohibited from making. that kind of an assignment. Secs. 896, 1084, R. S. 1909. (4) Moreover it does not lie in the mouth of these defendants to raise that question. If the Pemiscot County Bank has violated its charter the State alone has the right to complain. Goodland v. Bank, 74 Mo. App. 376. (5) Sec. 1112, R. S. 1909, provides that ''the president, cashier, assistant cashier, or any other officer, upon whom the powers of cashier may be imposed by the board of directors, before entering on the duties of their office, shall give good and sufficient bonds, which shall be approved by the board of directors, in writing . . . conditioned that they will well and faithfully perform all the duties of their office, and that they will hold the bank harmless for any loss occasioned by any act of such officer, until all his accounts with the bank shall have been fully settled and satisfied.'' (6) The phrasing of the bond sued on shows a clear intention on the part of the respondents to comply with Section 1112. It was their purpose to comply with that provision of the statute. They evidently believed they had complied with the provisions of the statute, and the board of directors of the bank evidently believed that the bond tendered contained the statutory conditions required in such a bond. Both sides acted upon the assumption that the bond was regular and the conditions required by the statute were perfectly expressed. The bank examiner evidently thought so as well as the board of directors. The case is made to turn upon this question: ''What was the intention of the parties as disclosed by the instrument, read in the light of the surrounding circumstances?'' Reason and authority support appellants' contention that the writing sued upon was intended as a bond. Lionberger v. Krieger, 88 Mo. 165; Brandt on Suretyship, sec. 80; Beers v. Wolf, 116 Mo. 184; Gleason v. Railway, 112 Mo. App. 116; Westervelt v. Mohrenstecher, 34 L. R. A. 479; 5 Cyc. 753, 755; Richmond v. Woodard, 32 Vt. 833; Belch v. Miller, 32 Mo. App. 387; Zellars v. Surety Co., 210 Mo. 104. (7) A bond is nothing but a written contract. The rule for the construction

of contracts which prevail over all others, is that the court may put itself in the place of the contracting parties; may consider, in view of all the facts and circumstances surrounding them at the time of the execution of the instrument, what they intended by the terms of their contract, and when their intention is manifest, it must control in the interpretation of the instrument, regardless of inapt expressions or mere technical rules of construction. Westervelt v. Mohrenstecher, 76 Fed. 121; B. & L. Assn. v. Obert, 169 Mo. 515; Caldwell v. Layton, 44 Mo. 222; Kansas City v. Youmans, 213 Mo. 151. (8) The omission of the scrivener to insert the word "not" between the words "shall" and "well" in the first line of the last paragraph of the bond (describing the conditions upon which the sureties are liable) gives rise to this suit. Without the word "not" having been written or intended to have been written, there would have been no occasion whatever for the sureties on the bond to have signed it. 5 Cyc. 755.

*W. M. Fitzh*, Assistant Attorney-General, and *J. P. Gilmore, Amici Curiae.*

(1) The bond in suit is a statutory bond required by law of all persons who assume the right to act as cashier of a banking corporation in Missouri. Sec. 1112, R. S. 1909; Jones v. Newman, 36 Hun, 634. (2) Where parties have entered into a bond required by law, and the bond is sufficent to show a clear intent on the part of such bondsmen to create the obligation provided in such cases by law, then the obligation is consummated, even though it be necessary in reading said bond to omit some word or to suppress some word in the obligation to fully and clearly express such intent. Sizemore v. Morrow, 6 N. C. 54; Gully v. Gully, 1 N. C. 20; Jones v. Newman, 36 Hun, 634; Pratt v. Wright, 13 Grat. (Va.) 175; Kincannon v. Carroll, 9 Yerg. (Tenn.) 11; Hotel Co. v. Encampment Co., 140 Ill. 248; Monmouth Park Assn. v. Iron Works, 55 N. J. L. 132; Bettman v. Harness, 42 W. Va. 433; Probate Judge v. Ordway, 23 N. H. 198; Swain v. Graves, 8 Cal. 549; Zellars v. Sure-

ty Co., 210 Mo. 86; Hoshaw v. Gullet, 53 Mo. 86; Graves v. McHugh, 58 Mo. 499; Flint ex rel. v. Young, 70 Mo. 221; State to use v. Berry, 12 Mo. 377; Newton v. Cox, 76 Mo. 352; Wimpey v. Evans, 84 Mo. 144. (3) "It is a rule of construction that the promisor is bound according to the sense in which he apprehended that the promisee received his proposition." Counts v. Medley, 163 Mo. App. 546; Bruner v. Wheaton, 46 Mo. 363. (4) "It has been settled since an early day in this State that common sense and good faith are the leading characteristics of all interpretations." Counts v. Medley, 163 Mo. App. 546; Fenton v. Perkins, 3 Mo. 23. (5) "Where there is room for construction, a contract should not be interpreted so as to give an unfair advantage to one of the parties to it over the other." Counts v. Medley, 163 Mo. App. 546; McManus v. Fair Co., 60 Mo. App. 216; Lumber Co. v. Dent, 151 Mo. App. 614. (6) Where one construction will destroy a contract and another construction will make it valid, and the party trying to destroy the contract is the party giving it, and who wrote it, then the court should so construe the contract as to be valid. 9 Cyc. 586, and note 36; Ferry Co. v. Railroad, 128 Mo. 224. (7) Where the contract contains no specific provision on a given point, or its terms are ambiguous, the construction placed upon the contract by the parties to it will control. Ins. Co. v. Dutcher, 95 U. S. 269; Reed v. Ins. Co., 95 U. S. 23; District of Columbia v. Gallagher, 124 U. S. 527; Jones v. De Lassus, 84 Mo. 541; Gas Light Co. v. St. Louis, 46 Mo. 121; Rose v. Carbonating Co., 60 Mo. App. 28; Mathews v. Danahy, 26 Mo. App. 660; Depot Co. v. Railway, 131 Mo. 291; Work v. Welch, 160 Ill. 468; Street v. Storage Co., 157 Ill. 605; Mohr v. McKenzie, 60 Ill. App. 575; 2 Page on Contracts, secs. 1126-1127; 9 Cyc. 588; Sattler v. Hallock, 160 N. Y. 291; Vincennes v. Light Co., 132 Ind. 114; Robbins v. Kimball, 55 Ark. 414; Katz v. Bedford, 77 Cal. 319; Railroad v. Anderson, 11 Colo. 293; Brigham v. Ross, 55 Conn. 373; Pratt v. Prouty, 104 Iowa, 419; Mitchell v. Wedderburn, 68 Md. 139. (8) The legal effect of a contract or bond does not depend upon its being punctuated correctly. 2 Page on Con-

tracts, sec. 1124; Ketcham v. Spurlock, 34 W. Va. 597; Homer v. Ins. Co., 98 Fed. 240, 39 C. C. A. 45. (9) In case this court should hold the bond in suit insufficient as a statutory bond then the court must hold it good as a common-law bond. State ex rel. v. 'O'Gorman, 75 Mo. 370; Grant v. Brotherton, 70 Mo. 458; Waltermann v. Frank, 21 Mo. 108; State ex rel. v. Sappington, 67 Mo. 529. (10) The rights of the sureties are not changed by the construction of the bond contended for by appellants. (11) Where an obligation has been created, then the law will put it beyond the power of the party who assumes the obligation to avoid it. Page v. Cook, 28 L. R. A.`759'; McCarty v. Howell, 24 Ill. 341; Harlow v. Boswell, 15 Ill. 56; Eaton v. Yarborough, 19 Ga. 82; Lewis v. Tipton, 10 Ohio St. 88; Crooker v. Holmes, 65 Me. 195; Walters v. McBee, 1 Lea (Tenn.), 364.

*Ward & Collins* and *John E. Kane* for respondents.

(1) The Citizens Trust Company, as assignee, is improper party to this suit. "Every action shall be prosecuted in the name of the real party in interest." Sec. 1729, R. S. 1909; Dickey v. Porter, 203 Mo. 24; Citizens Bank v. Burris, 178 Mo. 73; Van Stewart v. Miles, 105 Mo. App. 246. Here the suit was brought first as the liquidating agent, but a suit in this State cannot be brought in the name of an agent or trustee. Draper v. Faris, 56 Mo. App. 419; Furniture Co. v. Radditz, 28 Mo. App. 213. (2) There is nothing in the petition to show any authority in Pemiscot County Bank to bring this suit, but the petition shows that the Citizens Trust Company had the legal title, but that showing is contrary to law, so there is a misjoinder of parties plaintiff, and this misjoinder of parties plaintiff must be taken advantage of by demurrer when it is shown on the face of the petition as in this case. Sec. 1800, R. S. 1909; Fulwider v. Trenton Gas Co., 216 Mo. 582; Daugherty v. Burgess, 118 Mo. App. 557; Taber v. Wilson, 34 Mo. App. 94; Ragan v. Railroad, 111 Mo. 456; 5 Cyc. 823-824. "Where there are several joint owners of property they

should all join or be joined in an action, but where the whole title is in one party it is a misjoinder to make other parties who have no interest in the subject-matter parties plaintiff." Walker v. Lewis, 140 Mo. App. 31; Little v. Harrington, 71 Mo. 390; Butler v. Boynton, 117 Mo. App. 462; Stewart v. Gruder, 105 Mo. App. 247. "A mis joinder of parties plaintiff is cause for demurrer." Akins. v. Hicks, 109 Mo. App. 99. (3) Section 1081 does not authorize the assignment pleaded in this petition to the Citizens Trust Company as liquidating agent. (4) Section 1084, R. S. Mo. 1909, prevents banks from making general assignments, and does apply to this bank. Keaton v. Jorndt, 220 Mo. 117. There is nothing in the petition to show that the alleged assignment of all the Pemiscot County Bank's property was at a time when the bank was not receiving deposits. (5) Appellant contends that nobody can take advantage of this illegal assignment except the State. There can be no reason, rule or authority for that statement. The plaintiff must show some authority in itself to institute an action and that authority must be shown in the petition. (6) If there are two constructions that can be given to the bond then there is some room for construction by the court, but in this bond there are no two constructions that can be given to it. If the bond is ambiguous, then the court calls upon the surrounding circumstances to interpret what is meant by its ambiguity. Of course, the intention of the parties must be looked to in every bond; but the intention of the parties must be gathered from the instrument itself and appellant cannot go outside and uphold this instrument as binding upon a theory not expressed in the bond because the board of directors believed that the bond was a statutory bond or because the bank examiners thought the bond different from what it was. The law is that the "sureties stand upon the narrow domain of restricted liability and point with unshaken confidence to the strict letter of his contract." Lionberger v. Krieger, 88 Mo. 160; Gleason v. Railway, 112 Mo. App. 117; Westervelt v. Mohrenstrecher, 34 L. R. A. 477. "Sureties are favorites of the law and have

the right to stand upon the strict terms of their contract.'' Brant on Suretyship, sec. 97; Bayliss on Sureties, 144, 145, 260; State ex rel. v. Smith, 173 Mo. 406; Hill v. Keller, 157 Mo. App. 717; State v. Madery, 17. Ohio, 565; Nofsinger v. Hartnett, 84 Mo. 552. Respondents contract here that they would hold the bank harmless if Tindle would well and faithfully perform all his duties as cashier. See Nofsinger v. Hartnett, 84 Mo. 552. This case has been quoted and approved by the following cases and many others: Lionberger v. Krieger, 88 Mo. 160; State ex rel. v. Smith, 173 Mo. 398; Hill v. Keller, 157 Mo. App. 710; State ex rel. v. May, 160 S. W. 1030; Utterson v. Elmore, 154 Mo. App. 646; Reissaus v. Whites, 128 Mo. App. 143; Martin v. Whites, 128 Mo. App. 120.

WALKER, J.—This is a suit to recover on a bond of respondent, A. C. Tindle, for losses to the plaintiff bank on account of the embezzlement of its funds by Tindle as its cashier. The plaintiff trust company sues as assignee for the purpose of liquidating the assets of the bank of which the bond is a part. The defendants, other than Tindle, are the sureties on his bond.

The petition states the corporate capacity of the plaintiff trust company, its rights, powers and privileges as such, and that it acquired for value received by contracts as assignee, all assets and claims of the Pemiscot County Bank for the purpose of liquidating the bank's unsettled business; that by virtue of said assignment it became a trustee of an express trust for said bank and as assignee in connection with said bank it brings this suit.

The corporate character of the plaintiff bank is alleged; that it did a banking business from the date of its organization until June, 1913, when it ceased to be an active concern, at which time it assigned its assets to the the plaintiff trust company for the purpose above stated; that in April, 1912, defendant Tindle was elected and employed as cashier of said bank, and on said date entered into a bond to said bank with the other defendants named herein, as sureties, for his faithful performance of the duties of cashier. The bond is

then set forth *in haec verba.* The parts material to a determination of the issues here submitted are as follows. That Tindle, as principal, and the defendants, as sureties, naming them, are "indebted to the Pemiscot County Bank of Carruthersville, Missouri, in the penal sum of twenty thousand dollars, for the payment whereof, we and each of us bind ourselves, our heirs, executors and administrators, and every of them jointly, severally and firmly."

"The condition of the above obligation is, that whereas said A. C. Tindle, has been duly appointed by the board of directors of said Pemiscot County Bank, as cashier of said bank;

"Now, Therefore, if the said A. C. Tindle, shall well and faithfully perform all duties of the office of cashier of the said Pemiscot County Bank, respectfully, during the time for which he has been elected or appointed, the said above named and undersigned sureties hereby agree to hold the said Pemiscot County Bank harmless for any loss occasioned by any act of such officer, until all his accounts with the said bank shall have been fully settled and satisfied. It hereby being expressly understood and agreed, that the said sureties shall not be liable for any act of the said employee or employees resulting in loss to the said employer, whose act may have been committed prior to twelve o'clock noon on the 1st day of February, 1912, and subsequent to twelve o'clock noon of the first day of February, 1913."

The petition further avers that Tindle, as cashier of said bank, aided and assisted by Thos. B. Ward and L. A. Ferguson, as assistant cashiers, colluded and worked together with the fraudulent design of embezzling and misappropriating the money and funds of said bank. The course pursued by these parties to effect their purpose and plan to embezzle and misappropriate said money and funds is set forth, and it is alleged that said bank was unlawfully thus deprived by Tindle of large sums of money; that it was the duty of Tindle as cashier to see that the books of said bank were correctly kept to prevent those assisting him or

in his employment from making false or fraudulent entries in the books of said bank whereby the funds of same might be embezzled and misappropriated; that Tindle failed to thus discharge his duties as cashier; and while acting as same fraudulently embezzled and appropriated to his own use several hundred thousand dollars of money and property of said bank; and that said bank thereby lost all of said sums of money. Then follows a statement of the nature, character and amounts of these numerous embezzlements, which aggregate more than the penalty of said bond. The commission of the acts charged are alleged to have been done by said Tindle while he was acting as cashier of said bank and within the line of his duty as cashier and during the time covered by his bond, to-wit, between the first day of February, 1912, and the first day of February, 1913; and that his acts and misconduct constitute breaches of said bond; that defendants and each of them have failed and refused and still fail and refuse to account for and turn over the Pemiscot County Bank said sums of money herein set forth as having been embezzled, which said sums were then and there the money and property of said bank. Wherefore the plaintiffs pray judgment against defendants for twenty thousand dollars, the penalty of said bond, and that execution issue against defendants for the said sum as a part of the damages aforesaid.

Defendants demurred to this petition, assigning the following reasons therefor:

"1. Because said petition shows on its face that the plaintiff has no legal capacity to bring this suit.

"2. Because said petition shows on its face that said plaintiff is not the party in interest herein, and the suit cannot be maintained in the name of the plaintiff Citizens Trust Company.

"3. Because said petition fails to state facts sufficient to constitute any cause of action herein.

"4. Because said petition shows on its face that the plaintiff has no cause of action against the defendants.

"5. Because said petition is so indefinite and uncertain as not to apprise the defendants of their alleged cause of action or charge against the defendants.

"6. Because said amended petition shows on its face that the many divers and various things set out and enumerated therein did not constitute any breach of the bond and said petition fails to show any connection of any of the alleged many and divers matters and things set out in said petition are in any way connected or related to these defendants herein, or that said matters therein related and set out constituted any cause of action against the defendants herein.

"7. And that said petition on its face shows, as to these defendants as sureties on the alleged bond, that all matters and things related in said petition did not constitute any breach of the bond set out in plaintiff's petition, and did not constitute any cause of action or ground of complaint against these defendants.

"8. And that said amended petition shows on its face that there is a misjoinder of causes of action of many and divers and various and different alleged wrongful transactions on the part of the principal in the bond sued upon, A. C. Tindle, but which said charges do not constitute any violation of the bond and are alleged wrongful acts not properly joined in this action and do not constitute any cause of action against these defendants.

"9. And there is a misjoinder of parties plaintiff therein."

The demurrer was sustained; and the plaintiff declining to plead further, final judgment was entered for defendant from which this appeal is taken.

I. It is urged as one of the reasons to support the action of the trial court in sustaining the demurrer that the Citizens Trust Company was not a proper party plaintiff. We are not impressed with the soundness of this contention. The plaintiff alleges
**Parties Plaintiff.** that the Trust Company acquired from the bank by assignment all of the assets, includ-

ing choses in action, claims and demands, due or to become due said bank, to be collected by the trust company and applied to the use of the bank. This contract of assignment constituted the trust company a trustee of an express trust. As such, it was authorized to sue in its own name. [Sec. 1730, R. S. 1909.] This authority, however, did not preclude the trust company from joining the bank therewith as a party plaintiff as one "having an interest in the subject of the action." [Sec. 1731, R. S. 1909; Jones v. Railway, 178 Mo. 528; Lee v. Railway, 195 Mo. 400.] If, therefore, the bond can be made the basis of a cause of action under the allegations of this petition, the trust company was not without authority to sue and there was no misjoinder.

II. It is further contended that the assignment was unauthorized and hence the trust company could not base a right of action thereon. Section 1084, Revised Statutes 1909, is cited in support of this contention. It is as follows: "It shall be unlawful in this State for a bank, private banker, savings and safe deposit company or trust company receiving deposits to make a voluntary general assignment of its business and affairs. In case it shall find itself to be in a failing condition it shall immediately place itself in the hands of the Bank Commissioner. Any deed of voluntary general assignment executed by any such bank, private banker, savings and safe deposit company or trust company shall be null and void, and in case the officers or directors of any such institution shall endeavor to make any voluntary general assignment of its assets, the Bank Commissioner shall immediately take possession thereof and proceed, as provided in the case of insolvent banks in this State for the appointment of a receiver by court. All transfers of the notes, bonds, bills of exchange, or other evidence of debt owing to any bank, private banker, savings and safe deposit company or trust company, or of deposits to its credit; all assignments of mortgages, sureties on real estate or of judgments or decrees in its favor; all deposits of

money, bullion or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to it, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, shall be utterly null and void. No attachment, injunction or execution shall be issued against such bank, private banker, savings and safe deposit company or trust company or its property, before final judgment in any suit, action or proceeding in any state, county or municipal court.'' The prohibition contained in this section is limited to such banks as ''find themselves in a failing condition.'' This limitation if not express in its terms is indicative of a legislative purpose to prohibit insolvent banks from liquidating their business under the general law (Sec. 896, R. S. 1909) authorizing voluntary assignments for the benefit of creditors and to confine them, not exclusively, but for the purpose indicated in Section 1084, to the jurisdiction of the State Banking Department. Not only the provisions of this section but of Section 1081 confirm this conclusion. The confining of the supervision and liquidation of insolvent banks to the State Banking Department was primarily for the purpose of securing an honest and economical administration of the assets and not for the purpose of taking them from the possession of the owners of same when all of such owners, as is the case here, having any possible interest in the funds, desire to take them into their own possession and distribute them. Deprived of this right with no appreciable benefit to be derived therefrom was not the purpose of the statute, especially when such change of possession and supervision could only result in otherwise unnecessary expense and consequent loss. Thus construed, the act, instead of prohibiting, encourages creditors and stockholders, combining and contributing their aid for the benefit of all, and acting through an agency, appropriate and effec-

tive for that purpose, to liquidate a bank's affairs and retire it from business. No more effective instrumentality to satisfactorily accomplish such liquidation could be employed than a trust company working under the supervision of the State Banking Department. Much of the delay and the costs incident to a liquidation in court are avoided by pursuing this course. Persuasive at least of the correctness of this conclusion is the fact that the Attorney-General appears here as the friend of the court, not to object to the plan, but to register his approval of same by showing that it has been acquiesced in by the stockholders and depositors and that through its processes the individual and unsecured depositors have been paid. The objectors to the plan are the principal in this bond, through whose criminality these peculations were perpetrated, and the sureties on his bond.

From the allegation of the petition therefore in regard to the transfer of this bond to the trust company as a liquidating agency the presumption is permissible that circumstances existed which, in accordance with the views we have expressed, authorized the bank, with the consent of all its creditors to proceed with its own liquidation through the agency of the trust company. If this be denied and the respondents should claim that they have the right to assert that the transfer was unlawful, it devolved upon them to plead it by answer as a defense, which has not been done. The judgment of the circuit court upon the demurrer cannot therefore be sustained on the ground that the trust company is shown upon the face of the petition to be an improper party on account of the transfer of the bond sued on being void.

III. The vital question in this case is, whether under the conditions of this bond the sureties thereon are liable for the thefts of the bank's funds by the principal, as disclosed in the petition. This bond constitutes a contract. As such it is generally subject to the rules of construction applicable to other contracts. One of the most important of these is that if the contract be

ambiguous, the court will look not merely to its words, but to its subject-matter, the circumstances attending its making and the interpretation given to it at the time by the parties themselves. [5 Cyc. 755, and cases.] The condition precedently necessary to the application of this rule is ambiguity. The reason therefor is evident. If the bond be not fair on its face, it will require other help than its own terms to define its purpose. A resort, therefore, to any of the methods mentioned may become necessary to render its meaning unequivocal. [Bank v. Flanagan Mills & Elevator Co., 268 Mo. l. c. 570.] When, however, the terms of the instrument are so clear that its meaning cannot be mistaken, a resort to any of these aids to interpretation becomes not only ulterior but unnecessary. An instrument which speaks unmistakably in its own words leaves no room for construction. [St. Louis v. Railroad, 228 Mo. 712; Counts v. Medley, 163 Mo. App. l. c. 555.] But abstract reasoning aside, let the conditions of this instrument speak for themselves. They are: "That if the said A. C. Tindle shall well and faithfully perform all duties as such cashier of said Pemiscot County Bank *respectfully,* during the time for which he has been elected or appointed, the above named and undersigned sureties hereby agree to hold said Pemiscot County Bank harmless for any loss occasioned by any act of such officer until all of his accounts with said bank shall have been paid." This condition, measured by its words which from their terseness are ample and sufficiently definite to define their meaning, ignoring the improper use of the word "respectfully," which is superfluous, is, that the sureties will hold the bank harmless if the principal well and faithfully performs all of his duties as cashier. That this is not such a bond as is required of a bank cashier by the statute is evident (Sec. 1112, R. S. 1909); but this will not render it either absurd, meaningless or unauthorized, nor did it preclude in addition the taking of a statutory bond. [Bank v. Smith, 5 Allen (Mass.), 413.] Inadvertence or the honest mistakes of cashiers sometimes occasion losses which an obligation

of the nature of this bond may reasonably be construed to be intended to obviate. They are not infrequent or inconsiderable. Cashing forged checks, buying notes having forged signatures thereon, taking counterfeit money, making a loan in good faith thinking the sureties solvent, paying an obligation to an insolvent employee which had theretofore been paid, are some of the instances of inadvertent or honestly incurred losses occasioned by the acts of cashiers. The enumeration of others is unnecessary as these will suffice to demonstrate that the taking of the character of bond here under review is neither absurd nor meaningless, but serves a wise and practical purpose in the conduct of the business of banking. A bond to protect against this character of losses being authorized, a petition based thereon will state a substantial cause of action. It is, therefor, for the purposes for which it was executed, binding not only upon the principal, but upon those who are in privity with him, to wit, his sureties. [State to use v. Cochrane, 264 Mo. l. c. 593, and cases.] An attempt, however, to render this a statutory bond by the elimination therefrom or the insertion therein of a word or words which will effect a change in its purpose or meaning and thereby render the sureties liable is not authorized.

The necessity and the wisdom of a bond of this character having been shown, its failure to conform to the statutory requirements will not affect its validity for the purpose for which it was made. It was voluntarily entered into, and its conditions may be performed without a breach of the law. The sureties are therefore bound by the terms of their agreement, as recited in the bond, except as to such parts as may be illegal when their responsibility will continue as to the residue. [Daniels v. Tearney, 102 U. S. l. c. 420; Kountze v. Hotel Co., 107 U. S. l. c. 396; Liggett v. Humphrey, 21 How. (U. S.) l. c. 69.]

This reasoning is based upon the general rules of construction applicable alike to all obligations. When, however, the rights of sureties are involved, the doc-

trine of *strictissimi juris* may properly be invoked in construing the contract—this of course, when it is otherwise clear, plain and its meaning unmistakable. [State ex rel. v. Smith, 173 Mo. l. c. 407.] It is elementary, and does not admit of question, that the reason underlying the application of this limitation to the general rule of construction is that sureties are the favorites of the law. In Blair v. Insurance Co., 10 Mo. l. c. 566, this court first gave judicial recognition to this doctrine. This classification of sureties cannot be better defined than in the words of SHERWOOD, J., speaking for this Court in Nofsinger v. Hartnett, 84 Mo. l. c. 552, where he says in effect, citing numerous cases, that: "It is a well settled rule, both at law and in equity, that a surety is not to be held beyond the precise terms of his contract, and except in certain cases of accident, mistake or fraud, a court of equity will never lend its aid to fix a surety beyond what he is fairly bound to at law. This rule is founded on the most cogent and salutary principles of public policy and justice. In the complicated transactions of civil life, the aid of one friend to another, in the character of surety or bail, becomes requisite at every step. Without these constant acts of mutual kindness and assistance, the course of business and commerce would be prodigiously impeded and disturbed. It becomes then excessively important to have the rule established, that a surety is never to be implicated beyond his specific engagement. Calculating upon the exact extent of that engagement, and having no interest or concern in the subject-matter for which he is surety, he is not to be supposed to bestow his attention to the transaction, and is only to be prepared to meet the contingency when it shall arise, in the time and mode prescribed by his contract. The creditor has no right to increase his risk without his consent, and cannot therefore vary the original contract, for that might vary the risk." And on page 555 it is said that: "There is a principle that pervades the whole doctrine, on the relation subsisting between the creditor and the security debtor; that is, that the obligation shall by no

liberal intendment be carried in the smallest degree beyond the undertaking. And again, that there is no moral obligation on the security beyond or superadded to the legal obligation. His obligation being essentially a legal one, it would follow that if not liable in strict law, he is not liable at all. . . . The measure of the liability of sureties is fixed by the terms of the instrument they may sign and we do not understand such undertaking can be enlarged or varied by judicial construction. That would impose upon a mere surety obligations he had never assumed and perhaps would have been unwilling to take upon himself." To a like effect see State ex rel. v. Smith, 173 Mo. l. c. 406; State ex rel. Hamilton v. May, 160 S. W. (Mo. App.) l. c. 1031; Dougherty-Moss Lumber Co. v. Churchill, 104 S. W. (Mo. App.) 478; Mix v. Singleton, 86 Ill. 194; State v. Medary, 17 Ohio, 565.

This bond speaks for itself. Thus speaking the liability of the sureties thereon is limited to its exact words. If these will not render them liable, nothing can. There is no equity against sureties and courts will not so construe a bond as to create a liability at variance with its letter. Such a construction would be necessary to fix the liability of the sureties here, under the allegations of this petition. We therefore hold that it does not state a cause of action, from which it follows that the judgment of the trial court should be affirmed. It is so ordered.

All concur, except *Bond* and *Woodson, JJ.*, who dissent; *Faris, J.*, not sitting.