Nathan ZOGLIN and Jennie Zoglin, Plaintiffs-Appellants,

v.

Charles R. LAYLAND, Executor of the Estate of Defendant Allie T. Winkler (Deceased), Respondent.

No. 22874.

Kansas City Court of Appeals.

Missouri.

Nov. 2, 1959.

Barnett & Skeer, David Skeer, Roger T. Hurwitz, Kansas City, for appellants.

Rufus Burrus, Independence, for respondent.

BROADDUS, Judge.

This is a suit on a written guaranty executed by the defendant to the plaintiffs, by virtue of which plaintiffs claim they are entitled to recover $6,000. Trial to the court without a jury resulted in a judgment for plaintiffs in the amount of $29.12. Plaintiffs perfected their appeal. After submission of the case here the defendant, Allie T. Winkler, died, and, upon motion, this court ordered that the cause proceed for determination under the name of Charles R. Layland, Executor of the Estate of Allie T. Winkler, deceased, as the respondent.

This being a jury waived case, our duty is to review it upon both the law and the evidence as in suits of an equitable nature. The judgment should not be set aside unless clearly erroneous and due regard shall be given the opportunity of the trial court to judge the credibility of the witnesses. See Section 510.310 RSMo 1949, V.A.M.S.; Browder v. Milla, Mo. App., 296 S.W.2d 502; Parks v. Thompson, 365 Mo. 700, 285 S.W.2d 687.

The court made findings of fact and conclusions of law. The substance of the

findings of fact is: That as of April 1, 1951, the plaintiffs leased to one Terhune and Wooten a certain building known as the Strand Motion Picture Theater, located in Kansas City, for a term of five years; that by the terms of said lease, the lessees covenanted and agreed: (1) to pay as rent the sum of $500 per month during the term of the lease; (2) to keep and maintain the premises, except the exterior thereof, in good repair; (3) to preserve personal property described in the lease in as good condition as it was in at the time of the execution of the lease; and at the termination thereof to deliver to the lessors the premises and personal property in such condition; (4) to pay for all gas, light, heat, power, telephone and other utilities, except water, used in the operation of the theater; (5) to furnish heat in season to certain store rooms and apartments in the building but not covered by the lease; and (6) to pay all personal property taxes which might be assessed during the term of the lease on the personal property located in the building. The lease further provided that continuing default in the payment of rent for 10 days after written notice of such default by lessors to lessees, and in the event of the lessees' default of any other covenant therein contained for 30 days after written notice of such default, the lessors should be entitled to declare "an event of final default", and should have the right to enter and take possession of the premises and terminate the lease, but for this cause the obligation to pay rent should not cease. The court also found that concurrent with the execution of the lease, the defendant, as guarantor, entered into a written guaranty by which she undertook to guarantee to plaintiffs the payment of the rent reserved in the lease "during the last or fifth year" thereof, and the "due performance and observance of the covenants by the lessee therein contained"; that said contract of guaranty was prepared by plaintiffs or their agents; and that the defendant received no compensation as an inducement to execute said guaranty; that on September 17, 1952, plaintiffs by their acts and conduct, terminated the lease between plaintiffs and Terhune and Wooten in that they re-entered and took possession of the demised premises without giving written notice or any notice to said Terhune and Wooten that such re-entry and taking possession was as the agent of said Terhune and Wooten; that prior to the 17th day of September, 1952, the lessees had defaulted in payment of personal property taxes in the amount of $29.12; that on said date, said leased premises and personal property were in as good condition as at the time of the execution of the lease, or in the alternative, any change in the condition of said premises and personal property and any damage thereby occasioned to plaintiffs were incapable of ascertainment from the evidence.

The conclusions of law were to the effect that the guaranty agreement guaranteed to plaintiffs the due performance and observance of the various covenants contained in said lease, *but as to rents it included only the payment "for the last or fifth year of said lease"*; and that by re-entering and taking possession of the premises on September 17, 1952, without notice to Terhune and Wooten that plaintiffs were doing so as the agents of Terhune and Wooten, the plaintiffs thereby terminated the lease as of said date and relieved the lessees and the defendant of any obligation under the lease from and after said date.

The material part of the guaranty agreement reads: "(1) First party (defendant) hereby guaranties to Second Parties (Plaintiffs) the payment of the rent reserved by the said lease *during the last or fifth year of the term thereof on the days therein appointed* and the due performance and observance of the covenants by the lessee therein contained; so that in the event lessee forfeits said lease and becomes obligated to lessor for breach of any covenant contained in said lease prior to the expiration of the term thereof, First Party guaranties to Second Parties the payment

of any such obligation, provided, however, that First Party's obligation shall never be greater than a total of $6,000.00". (Italics supplied.)

Other evidence will be considered in connection with the points raised.

Plaintiffs' first contention is that the court erred in holding that the guaranty, as to payment of rent, was limited to the failure to pay during the *"last or fifth year"* of the lease only. This requires construction of a guaranty executed by an accommodation guarantor, and there are well established legal principles circumscribing the scope of such a construction.

 It is conceded that the defendant is an accommodation guarantor and as such is a favorite of the law in this state. Citizens Trust Co. v. Tindle, 272 Mo. 681, 698, 199 S.W. 1025. Without quoting from the various cases, it is well settled that the rights of a guarantor are strictissimi juris, and the contract of guaranty must be construed strictly according to its terms, and no stretching or extension of its terms can be indulged in order to hold the guarantor liable on his guaranty. Bank of Slater v. Harrington, 218 Mo. 645, 266 S. W. 496, 497. A guarantor is bound only by the precise words of his contract. Other words cannot be added by construction or implication, but the meaning of the words actually used is to be ascertained in the same manner as the meaning of similar words used in other contracts. They are to be understood in their plain and ordinary sense, when read in the light of the surrounding circumstances and the object intended to be accomplished. But this rule does not entitle a guarantor to demand an unfair and strained interpretation of the words used, in order that he may be released from the obligation which he has assumed. Extrinsic evidence cannot be received to contradict, add to, subtract from, or vary the terms of a guaranty; but when its meaning is doubtful, or obscurely expressed, parol testimony in relation thereto, requisite to a clear understanding of its purport, is admissible. Kansas City, to Use of Kansas City Hydraulic Pressed Brick Co. v. Youmans, 213 Mo. 151, 112 S.W. 225; Citizens Trust Co. v. Tindle, supra. In the instant case, there was no parol testimony offered in explanation of the guaranty.

The plaintiffs argue that in construing the guaranty of rent to be applicable *to the fifth year only,* the court failed to consider all of the quoted provisions of the guaranty; reached an illogical conclusion; and did not carry out the intention of the parties. They suggest that if the clause, "If the lessee remains on the leased premises for the entire term of this lease," is inserted or read into the guaranty at the beginning thereof, then the entire paragraph makes good sense and is consistent with the obvious intention of the parties. Under the authorities supra, neither the trial court nor this court can add words by construction or implication. The meaning of the words actually used must be ascertained and enforced.

 The exact language of the guaranty states that the defendant guarantees to the plaintiffs the payment of the rent "during the last or fifth year of the term thereof on the days therein appointed * * *". These words are plain and precise; there is no ambiguity. The author of the guaranty was doubly careful in defining the obligation by stating that the rent guaranteed was for the *"last or fifth year"*. It is not within the province of this court to explore the question of *why* such words were used; they must be accepted and construed as used.

Furthermore, the plaintiffs seem to have understood and construed the guaranty of rent to be applicable to the fifth year only. In a letter to defendant, dated November 20, 1951, plaintiffs' attorney, with their knowledge and consent, stated: "Contemporaneous with the execution of the lease, you executed a guaranty to the lessors guaranteeing the payment of the rent for the last or fifth year of the term". And in

another letter to defendant written by the plaintiffs dated April 17, 1956 (after the lease expired), they stated: "Contemporaneous with the execution of the lease you executed a guaranty to the lessors guaranteeing the payment of the rent for the last or fifth year of the term, provided the lessees failed in their obligation."

It is our conclusion that the court did not err in holding that the guaranty of rent applied to the fifth year only.

■ Plaintiffs' next contention is that the court erred in finding that the guarantor was released because the plaintiffs took possession of the theater under circumstances establishing that they terminated the lease and did not take it over as agent of the lessees.

The facts on this issue were developed by the plaintiffs in the direct examination of plaintiff Dr. Zoglin. He testified that he was familiar with the leasing and operation of picture theaters; that he had been "directly or indirectly associated with the film industry for the last 25 or 28 years"; that he had operated the Strand Theater for a year or more before he leased it to lessees; and that he had operated the Ritz Motion Picture Theater since 1941. He also testified that in November, 1951, Terhune, one of the lessees, departed and he had not heard from him thereafter; that Mr. Wooten, the other lessee, continued to operate the theater until September 15, 1952, but that during that time the rent had been reduced to $400 a month; that on that date, a Mr. Moore, who had been managing the theater for the lessees, came to Dr. Zoglin's office and delivered to him the keys to the theater; that he told Mr. Moore that he would like to contact Mr. Wooten and see if they could work out something concerning the lease; that thereupon he took immediate possession of the theater, and the same evening he held a regular picture show, and continued to operate it throughout the remainder of the lease term; that he did not hear from Mr. Wooten thereafter; that after he took possession, he did

considerable renovating, cleaning and repainting the theater; repairing the air conditioning unit and water fountain; installed a new picture screen, and did other things looking to the improvement of the appearance of the theater; that he listed the property for rent with two agents who specialized in the management and rental of picture theaters, but had been unable to re-rent the same. Many times during Dr. Zoglin's testimony, both direct and cross-examination, he stated that certain things were done "when I took possession of the theater". At no time did he claim that he took possession as the agent of the lessees. Everything that the parties did indicated that it was considered the lessees had abandoned the lease and that the plaintiffs were taking possession as owners.

After a careful reading of the testimony, we are of the opinion that the trial court could find that the action and conduct of the plaintiffs and the lessees constituted a surrender of the lease. This question is discussed at great length by our Supreme Court in a case which is cited by both plaintiffs and defendant, that of Von Schleinitz v. North Hotel Co., 323 Mo. 1110, 23 S.W. 2d 64, 74. Many authorities are there reviewed and we quote what seems to be the accepted rule in Missouri:

"While a surrender of the leased premises by the tenant and an acceptance thereof by the landlord must be consummated by mutual consent and agreement of the parties, yet such may be accomplished by implied, as well as by express, agreement of the parties. If accomplished by implied agreement of the parties, it is said to be done by operation of law, and the intention of the parties is to be implied from the acts and conduct of the respective parties, as disclosed by the attending facts and circumstances. 'A surrender by operation of law occurs where the parties, without express surrender, do some act or acts from which it is necessarily implied that they both have agreed to consider the surrender as

made—acts which are necessarily inconsistent with the continued relation of landlord and tenant. While it has frequently been said that whether a lease has been terminated by operation of law is a question of intention of the parties, it is, nevertheless, held that this mutual agreement may be implied, upon the principle of estoppel, from the acts of the parties, independently of, and even contrary to, their actual intent. The surrender or abandonment of a written lease may be inferred from the acts and conduct of the parties.'

\* \* \*

\* \* \* \* \* \*

"While the juristic authorities are in accord in holding that a surrender and an acceptance by operation of law occurs when the acts and conduct of both the landlord and the tenant are such as to be the equivalent of a mutual agreement on their part to treat the surrender as made by the tenant and as accepted by the landlord, the authorities are somewhat in conflict respecting what particular acts or conduct on the part of the landlord are sufficient to raise the implication that the landlord has acquiesced and consented to a surrender of the leased premises by the tenant. It appears to be the weight of juristic authority, however, that, *in order to prevent an acceptance of a surrender by operation of law, the landlord must, either by word or by act, convey to the tenant notice that the landlord resumes possession of the premises for the benefit of the tenant, and not for the benefit of the landlord."* (Italics ours.)

For other cases announcing these same general principles, see Huling v. Roll, 43 Mo.App. 234; Sessinghaus v. Knocke, 127 Mo.App. 300, 105 S.W. 283; Jennings v. First National Bank of Kansas City, 225 Mo.App. 232, 30 S.W.2d 1049, 1052; Crow v. Kaupp, Mo., 50 S.W.2d 995, 998; Blond v. Hoffman, 343 Mo. 247, 121 S.W.2d 137, 138; Wahl v. Hinchey, Mo.App., 72 S.W. 2d 497, 499.

■ However, the plaintiffs contend that even though the court could find from the evidence that the lease was terminated on September 17, 1952, nevertheless, the defendant would not be released because the issue of release was not pleaded in the answer. It is true the answer did not specifically plead release; but plaintiffs alleged in their petition that they took possession of the theater and operated it in an effort to mitigate the damages resulting from the breach of the lease. The answer denied this allegation, and during the trial, the plaintiffs developed, on direct examination, all the facts and circumstances surrounding the retaking of the property and the efforts made to notify the tenants of such taking. From the whole record, it appears that the issue of whether the lease was terminated and surrendered or whether the plaintiffs were merely taking over as agents of the lessees was tried. Under such circumstances, it will be considered that such issue was tried at least by the implied consent of the parties, and is therefore to be treated and considered as though it had been specifically raised in the pleadings. Duffy v. Barnhart Store Co., Mo. App., 202 S.W.2d 520, 526.

■ Plaintiffs also contend that sufficient notice of their intention to take over as agents of the lessees was given. This is on the theory that the giving of notice may be excused where it appears that it is impossible to give it. Citing 66 C.J.S. Notice § 16, p. 653. However, whether it was impossible to give the notice was a question of fact to be determined by the court, and the court was not bound by the statement of Dr. Zoglin that he was unable to get in touch with the lessees and was thereby excused from giving notice.

Plaintiffs also claim that sufficient notice was given by a letter dated September 19, 1952, addressed to the defendant guarantor. This letter does not and cannot be con-

strued to be notice to the tenants under the law as declared in the case of Von Schleintz v. North Hotel Co., supra.

■ Plaintiffs' last contention is that the court erred in not allowing damages for breach of the covenant to preserve the personal property, which damage had occurred prior to September 17, 1952, the date on which plaintiffs took possession of the theater. The two items for which damages are claimed are the costs of replacing a water fountain and certain repairs to the air conditioning system.

Dr. Zoglin testified that he went to the theater building sometime in June, 1951, and found that the water fountain was not functioning; that he notified the tenants, but they did not repair it; and that after he took possession he installed a new water fountain, and makes claim for the cost of the new fountain. He did not testify why the old fountain would not function, or what it would reasonably cost to repair it; or that the cost of the new fountain which he installed was a reasonable charge. With reference to the air conditioning unit, he testified that it was located outside of the building and at the approach of winter "it` was necessary to disconnect the water and battery and also take care of the Freon gas"; that in the fall of 1950, prior to the execution of the lease, he attended to these matters and prepared the unit for winter; that after the lessees took possession in April, 1951, they did not operate the air conditioning unit at all; that in 1953, after he had taken possession in September, 1952, he incurred certain expenses in putting the unit in operation, which included a new battery and new Freon. He did not testify that the expenditures for repairs were reasonable, or that the lessees did anything other than fail to operate the system during the summer.

Because of the indefiniteness and generality of the testimony concerning what the tenants did, if anything, to the water fountain and the air conditioning unit, and the absence of evidence as to the reasonable expense of repairing or replacing the same, we are of the opinion that the trial court could find, as it did find, that such damages are incapable of ascertainment.

Upon the whole record, we would not be justified in holding that the judgment is "clearly erroneous." It follows, under the statute, V.A.M.S. § 510.310, that we should not set it aside. The judgment is affirmed.

All concur.