# HIGGINS v. DEERING HARVESTER COMPANY et al., Appellants.

### Division One, March 29, 1904.

1. **DEED: By Husband to Wife: Attacked for Fraud.** Where defendant claims title to land under a deed of trust by the wife to secure the husband's debts, the defendant cannot attack a former transfer of the land by the husband to the wife as being fraudulent, even though the husband joined in the deed of trust.

2. **DEED OF TRUST: Knowledge of Debt Secured: Release.** Where the defendant knew that the debt secured by the wife's deed of trust was the debt of the husband, and not her debt, and that the wife's land received no benefit from the money evidenced by the notes secured by the deed of trust, defendant cannot be heard to say that it did not know that the wife signed the notes and executed the deed of trust as surety for the husband. Under such circumstances any act that would release any individual surety of the notes would release her land from the lien of the deed of trust.

3. ———: ———: ———: **Subsequent Surety.** The wife at the time she signed notes evidencing her husband's debts, and gave a deed of trust to secure their payment, did not know that her husband's father was to sign them also as surety, but that was subsequently done, but she did not consent thereto, but at the time she executed the deed of trust on her land there was no other security for the payment of the notes than the deed of trust. But the notes were given in lieu of other notes given by her husband to the same payee, on which her husband's father was surety. *Held,* that the changing of the contract of suretyship after she executed the deed of trust, by the act of her husband's father in signing the notes as surety, at defendant's request, without her consent, released the wife's land from the deed of trust.

4. **SURETY: Release: Alteration of Contract.** Any alteration in the contract by the principals thereto releases the surety, unless the surety consents thereto.

5. ———: ———: ———: **Beneficial Alteration.** If the contract is altered or changed by the principals without the surety's consent, the surety is released whether the alteration was beneficial or injurious to the surety.

6. ———: ———: ———: **Another Surety To Note.** The addition of the name of another party to a note, by a party in interest, after it has been executed, will release the prior sureties, unless they consent thereto.

7. ———: ———: ———: ———: **Deed of Trust.** And where the prior surety gave a deed of trust on her land to secure the payment of the notes, the addition of another name thereto released such prior surety and the deed of trust. The surety being released from the note, thereafter there was nothing that the security of the deed of trust could apply to.

Appeal from Johnson Circuit Court.—*Hon. Wm. L. Jarrott*, Judge.

AFFIRMED.

*W. W. Wood* for appellants.

(1) The alteration of a note does not discharge the mortgage by which it is secured, in the absence of fraud. Baskin v. Wayne, 62 Mo. App. 515; Hoffman v. Molloy, 91 Mo. App. 367; Clough v. Seay, 49 Ia. 111; Vogle v. Ripper, 34 Ill. 100; Smith v. Smith, 3 S. E. 78 (27 S. C.); Heath v. Blake, 5 S. E. 842; Gilette v. Powell, Speers, Eq. (S. C. 142); Plyler v. Elliott, 19 S. C. 264; Creek v. Nall, 17 S. E. 80, 112 N. C. 370; Gilette v. Smith, 18 Hun 10; Pingrey on Mortgages, sec. 259; 2 Jones on Mortgages (4 Ed.), 1215; Elliott v. Blair, 47 Ill. 342; Walton Plow Co. v. Campbell, 52 N. W. 883; Bailey v. Gilman, 74 S. W. 875; Simpson v. Sheley (Kan. App.), 60 Pac. 1098; 2 Am. and Eng. Ency. Law (2 Ed.), p. 202; Jones v. Hoard, 59 Ark. 47; Mersman v. Werges, 112 U. S. 139; 2 Cyclopedia of Law and Pro., p. 224; Jeffrey v. Rosenfeld (Mass.), 61 N. E. 49; Barnes v.

Van Keieser, 31 Neb. 168; Glass Co. v. Matthews, 89 Fed. 830; Bank v. Niedenbeek, 97 Fed. 898. (2) A mortgage is regarded as security for the debt distinct from the note. Williams v. Allnutt, 72 Mo. App. 64; Crooker v. Holmes (Me.), 20 Amer. Rep. 687; Owings v. McKenzie, 133 Mo. 323. (a) It may be enforced though limitation has run on the note. Thayer v. Mann, 36 Mass. 535; Choteau v. Borlando, 20 Mo. 487; Wood v. Augustine, 61 Mo. 46; Cape Girardeau v. Harbison, 58 Mo. 90; Tucker v. Wells, 111 Mo. 399; Lewis v. Schuman, 15 Mo. App. 345; (b) And the giving of renewal notes does not release the mortgage. McDonald v. Hulse, 16 Mo. 503; Lippod v. Held, 58 Mo. 213; Christian v. Newberry, 61 Mo. 451; Weiner v. Peacock, 31 Mo. App. 244. (3) The deed from Emmet C. Higgins to John C. Higgins was never delivered, and therefore the title to the property in controversy never passed out of Emmet C. Higgins. (4) The deed from John C. Higgins to plaintiff was executed for the purpose of enabling Emmet C. Higgins to mortgage the property in controversy to secure the debt due to the defendant, and to that extent relieve John C. and H. C. Higgins from liability on the debt of Emmet C. Higgins to defendants, and in equity the property went into plaintiff's hands charged with the payment of the debt. Martin v. Nixon, 92 Mo. 26. (5) Conceding, for the sake of argument, that the deed from Emmet C. Higgins to John C. Higgins was delivered, the voluntary conveyance by Emmet C., through John C. Higgins, to plaintiff, was fraudulent and void as to existing creditors of Emmet. This proposition is too well established to need citation of authorities in support of it. A plaintiff can not recover in a case where, in order to establish his right, he is under the necessity of showing and depending upon an illegal and fraudulent transaction to which he had been a party. Sprague v. Rooney, 104 Mo. 349; Roselle v. McAuliffe, 35 S. W. 1135; Dearmott v. Sedgwick, 39 S. W. 776; McDearmott v. Mc-

Lure, 4 Dall. 314.   (6) In order to discharge a surety
in consequence of a variation of a contract, or by a
deprivation of his equitable rights and remedies, not
only the fact of suretyship must exist, but it must be
known to the creditor at the time of the act complained
of.   The knowledge of it must be brought home to the
creditor by the surety clearly and satisfactorily.   The
surety therefore should be held to strict proof.   Niem-
cewicz v. Gahn, 3 Paige 614; Gahn v. Niemcewicz, 11
Wend. 317; Brandt, Suretyship and Guar. (1 Ed.), secs.
20, 328; Pratt v. Conway, 148 Mo. 291; White v. Smith,
73 S. W. 316; Knight v. Whitehead, 26 Miss. 245.

   *J. W. Suddath* for respondent.

   (1) Any alteration in a note, whether material
or not, if made by interested party, releases all parties
not consenting thereto.   Farmers Bank v. Myers, 50
Mo. App. 157; First Nat. Bank v. Fricke, 75 Mo. 178;
German Bank v. Dunn, 62 Mo. 79; Moore v. Hutchin-
son, 69 Mo. 489; Allen v. Dorman, 57 Mo. 291. (2) The
signing of an additional name as maker to a note is
such an alteration as will discharge all the original par-
ties not consenting thereto.   Lunt v. Silver, 5 Mo. App.
186; Farmers Bank v. Myers, supra; Allen v. Dorman,
57 Mo. App. 288; Haskell v. Champion, 30 Mo. 136;
Owens v. Tague, 3 Ind. App. 245, 29 N. E. 784;
Berryman v. Manker, 56 Ia. 150, 9 N. W. 193; State v.
Paxton (Nebr.), 90 N. W. 983.   (3) Contrary to
holdings in some States, and contrary to defendant's
contention, it is held in this and several other States
that when a party by his own act renders an instrument
void, he can not recover on the instrument or for the
money had or received; he will not be permitted to
prove the promise contained in it by any other evidence,
nor resort to the common count on the original statement,
and that irrespective of actual fraud in the alteration.
Whitner v. Fry, 10 Mo. 348; McMurtry v. Sparks, 71

Mo. App. 126; 2 Cyc. of Law and Procedure, p. 183; Toomes v. Rutland, 57 Ala. 379, 29 Am. Rep. 722; Whelock v. Freeman, 13 Pick. (Mass.) 175; Warring v. Smith, 2 Barb. Ch. 119; Bigelow v. Stilphen, 35 Vt. 521; Wood v. Steele, 6 Wall. 80; White v. Huss, 32 Ala. 430; (4) When a writing constitutes in itself the only obligation existing against the promisor, all remedies thereon are lost by its material alteration. The law refuses to create a new contract to supply the place of the one destroyed. 1 Am. and Eng. Enc. Law (2 Ed.), p. 203; Whitner v. Fry, supra; Crawford v. West Side Bank, 100 N. Y. 50, 53 Am. Rep. 157. (5) When a mortgage is given by the owner to secure the note of another, such property occupies the position of surety, and anything which would discharge an individual thereon who is only personally liable, would discharge the mortgage and property. 1 Brandt on Suretyship (2 Ed.), sec. 35; Pingrey on Mortgages, sec. 357; Spear v. Ward, 20 Cal. 659; Bank v. Barnes, 46 N. Y. 170; George v. Andrews, 60 Md. 26, 45 Am. Rep. 706; Calvo v. Daries, 73 N. Y. 211, 29 Am. Rep. 130; Johnson v. Franklin Bank, 173 Mo. 179; White v. Smith, 174 Mo. 203; Smith v. Townsend, 25 N. Y. 482; Chisner v. Brayon, 16 Iowa 130; Metts v. Todd, 36 Mich. 473; 1 Jones on Mortgages, sec. 942; Gahn v. Nieceweiz, 11 Wend. (N. Y.) 324; Murray v. Marshall, 94 N. Y. 611; Spencer v. Spencer, 95 N. Y. 611. (6) Where the real estate of the wife is mortgaged to secure her husband's note, her estate stands in the relation of surety to that debt and anything which would discharge the individual surety on his own personal liability, will discharge her property from the mortgage. Pingrey on Mortgages, sec. 356; Barrett v. Davis, 104 Mo. 549; Wilcox v. Todd, 64 Mo. 388; Bruegge v. Bedard, 89 Mo. App. 543. (7) Where title to wife's property, mortgaged for her husband's debts, is recorded, such record will be sufficient notice to the creditor of the fact of suretyship. 1 Brandt on Suretyship (2 Ed.), sec. 35; Bank v. Burns,

46 N. Y. 170; Smith v. Townsend, 25 N. Y. 479; Trenton v. Eldridge, 98 Ind. 525.   (8)   A note and mortgage, when given at the same time, and especially by the surety, are one instrument and should be construed together.   Mayes v. Robinson, 93 Mo. 114; Jones on Mortgages, sec. 71; Pingrey on Mortgages, sec. 203; Tate v. Fletcher, 77 Ind. 102; Bowman v. Mitchell, 79 Ind. 84.   (9) Any alteration of a note that will release the surety on the note will also release a mortgage of his property securing the same.   Park & Lacy v. White River Lumber Co., 43 Pac. 202; Bragg v. Shain, 49 Cal. 131; Lodge v. Wood, 14 Nev. 293; United States v. Corvin, 1 Bond. 339; Barrett v. Davis, 104 Mo. 560; Tate v. Fletcher, 77 Ind. 102; Bowman v. Mitchell, 79 Ind. 84; Elliott v. Blair, 47 Ill. 342; Vogel v. Ripper, 34 Ill. 100.   (10)   A deed made to a party for the purpose of his making deed to a third party vests equitable title in the third party; he is only a conduit and acquires no title.   Fontaine v. Boatman's Sav. Inst., 47 Mo. 552; Haynes v. Jones, 46 Mass. 292; Chickering v. Lovejoy, 13 Mass. 51; Bartlett v. Gonze, 44 Ky. 152; Edmondson v. Welch, 27 Ala. 578.

MARSHALL, J.—This is a proceeding in equity to cancel a deed of trust made by the plaintiff and her husband, Emmet C. Higgins, on February 14, 1899, to W. T. Hull, as trustee for the defendant company, whereby the plaintiff pledged her property, to-wit, lot 3 and the south half of lot 4 of Russell's addition to Warrensburg, as surety for the payment of four promissory notes, executed by her said husband to said company, for his then past due indebtedness to the company.   The particular ground for relief relied on is that after the contract of suretyship was entered into the company caused John C. Higgins, her husband's father, to sign the notes as further security, whereby the contract was changed without the plaintiff's knowl-

edge or consent, and in consequence of which her property became released.

The trial developed the facts to be as follows:

Originally the property belonged to Emmet C. Higgins, the plaintiff's husband. On January 7, 1898, he concluded to transfer the property to his wife. The plaintiff's testimony shows that she had furnished a part, at least, of the purchase price of the land, and for this reason he wanted to transfer the property to her. The defendant's testimony shows that there was no consideration for the transfer. But it is immaterial in this case which was the fact, for it nowhere appears from this record that the defendant was a creditor of the husband at that time, nor does it appear that any fraud was intended by the transfer, nor is this an action attacking the transfer for fraud, but on the contrary the defendant claims under the title of the wife and not adversely to it.

To carry out his intention the husband caused two deeds to be prepared on January 7, 1898, one from himself and his wife to his father, John C. Higgins, and the other from his father, John C. Higgins, to his wife Minnie E. Higgins, the plaintiff. For some reason neither of these deeds was executed at that time. The first deed, from Emmet C. Higgins and wife to John C. Higgins, was acknowledged on August 1, 1898, and recorded on September 12, 1898. The second deed, from John C. Higgins, was not acknowledged or recorded until February 14, 1899. But, as will hereinafter be pointed out, it is wholly immaterial in this case when those deeds were executed, recorded or delivered, for the defendant claims under the plaintiff, by virtue of her deed of trust, and if she has no title the defendant has none.

At some time, not disclosed by the record, the husband, Emmet C. Higgins, became indebted to the defendant, and on December 15, 1898, he executed to the defendant a note therefor in the sum of $651, and his

father, John C. Higgins, and his brother, Hedrick C. Higgins, indorsed the same. The defendant did not seem to be satisfied with its security, so on February 13th it sent its two agents, W. T. Hull and J. E. Hart, to see John C. Higgins, the father, who lived some ten miles from Warrensburg, about the matter. They tried to get him to give a mortgage on his property to secure the debt, but he refused. There is much conflict in the testimony as to whether or not John C. Higgins told them that he held the title to the land in controversy and would deed it to the plaintiff, and she and her husband, the debtor, could give them a mortgage on it, but it is wholly immaterial whether he told them so or not, for in fact he did so deed it to the plaintiff and the plaintiff did give the defendant a mortgage on it, and the validity or release of that mortgage, and not the plaintiff's title to the land, is the question involved in this case.

On February 14, 1899, John C. Higgins and wife went to Warrensburg and executed the deed that had been prepared on January 7, 1898, to the plaintiff, and it was put on record at 3:25 o'clock p. m. Thereafter on the same day the plaintiff and her husband executed the deed of trust, in controversy here, to the defendant, and it was placed on record at 5:05 o'clock p. m. The plaintiff signed the notes as well as the deed of trust, and the deed of trust recited that it was given as security for the notes. Thereafter, the evidence is conflicting as to how long after the plaintiff signed the notes and executed the deed of trust, but the time is immaterial, as it was after such signing and execution, the defendant prevailed upon John C. Higgins to sign the notes as further security. This was done without the knowledge or consent of the plaintiff. The defendant pleads that she afterwards ratified it, but the evidence does not support the contention.

Upon this showing, the trial court entered a decree

for the plaintiff and ordered the deed of trust cancelled, and the defendants appealed.

The plaintiff claims title under the deeds from her husband and herself to his father, John C. Higgins, and from John C. Higgins to her. The defendant claims under the deed of trust from the plaintiff. The issue joined in this case is whether that deed of trust was released by the act of the defendant procuring John C. Higgins to indorse the notes after the execution of the deed of trust. Under such issue and circumstances the defendant can not be heard to attack the plaintiff's title. Therefore, it can not be heard to say that the deed from plaintiff and her husband to John C. Higgins was never delivered, and hence that the title to the land is still in Emmet C. Higgins. For the same reason it can not be heard to say that it did not know that the plaintiff signed the notes and executed the deed of trust as surety for her husband. The defendant knew that the debt secured was the debt of the husband and not of the wife, and that the wife's land received no benefit from the money evidenced by the notes.

This being true, the wife and her property stood merely as surety for the husband's debt, and any act that would release any individual surety, would release her land. The law applicable to such cases has so lately been reviewed and settled by this court, so far as this State is concerned, in the cases of Johnson v. Franklin Bank, 173 Mo. l. c. 179, and White v. Smith, 174 Mo. l. c. 203, that it is unnecessary to do more in this case than to refer to what was said in those cases.

There is some conflict in the evidence as to whether John C. Higgins signed the notes at the same time that the plaintiff signed them and executed the deed of trust, and also as to whether the plaintiff knew that he did so or was to do so. The trial court found that he signed them after the plaintiff had done so and after she had executed the deed of trust and that she did not know he had done so and never consented thereto. The weight

of the evidence and the circumstances of the case which are admitted, support the finding of the court. The defendant had a note made by Emmet and indorsed by Hedrick C. and John C. Higgins. It was not satisfied with it and wanted real estate security. It tried to get John C. Higgins to give a mortgage on his land, but he refused, and then it was agreed that John C. Higgins and his wife should come to town the next day, and he should convey the land to the plaintiff and she should give a mortgage on it to secure the debt, and the old note should be surrendered and the new note, secured by the mortgage, should be substituted. This was done. The deed thus made by John C. Higgins to the plaintiff was placed upon record, and afterwards the deed of trust in question was executed. Thus the defendant had both actual and constructive notice that the plaintiff's land stood only as surety for her husband's debt.

This only leaves for adjudication the question whether the act of the defendant in procuring John C. Higgins to sign the notes after they had been signed and the deed of trust had been executed by the plaintiff, had the effect in law to release the plaintiff's land.

The general rule is that any alteration in the contract by the principals thereto, releases the surety, unless the surety consents to it. And the rule is so strict that the courts will not stop to inquire whether the alteration was injurious or beneficial to the surety. The reason is that contracts of suretyship are strictly construed in favor of the surety, and he has a right to stand upon the exact contract he made, and no one, not even a court, can change it in any respect. [Bank v. Dunn, 62 Mo. 79; Moore v. Hutchinson, 69 Mo. 429; Bank v. Fricke, 75 Mo. 178; Morrison v. Garth, 78 Mo. l. c. 437; Hord v. Taubman, 79 Mo. l. c. 102; Evans v. Foreman, 60 Mo. 449; Kelly v. Thuey, 143 Mo. l. c. 434.]

The addition of the name of another party to a note, by a party in interest, after it has been executed,

will release the other partes to the note, and this is especially true as to a surety on the note. [Haskell v. Champion, 30 Mo. 136; Bank v. Fricke, 75 Mo. l. c. 180; Hord v. Taubman, 79 Mo. l. c. 102; Lunt v. Silver, 5 Mo. App. 186; Bank v. Myers, 50 Mo. App. 157; Allen v. Dornan, 57 Mo. App. 288; State v. Paxton, 90 N. W. 983; Owens v. Tague, 29 N. E. 784; s. c., 3 Ind. App. 245; Berryman v. Manker, 56 Ia. 150.]

The defendant, however, contends that while the addition of the name of John C. Higgins to the note might have the effect of releasing the plaintiff from liability as surety on the note, it did not have the effect of releasing the land from the lien of the deed of trust, for the reason that the deed of trust "is a security for the debt wholly separate and distinct from the note." And defendant argues that this is so because the deed of trust might be enforced even though the note is barred by limitation.

It is true that as between the debtor and the creditor, prior to the act of 1891 (Laws 1891, p. 184, now sec. 4276, R. S. 1899), a mortgage could be enforced even though the note was barred. This was upon the ground that they both evidenced and secured a debt, and that although the debt evidenced by the note could not be enforced because it was barred by limitation, nevertheless the debt was secured by the mortgage and the mortgage was not barred. But even this has been changed by the act of 1891, and both are now barred by the same period of limitation.

But such considerations do not determine this case. Construed strictly, the obligation of the deed of trust was to secure the notes and not the debt. Hence if the notes became void as to the surety, the obligation to pay then ceased. But in a broader sense the doctrine contended for by the defendant is inapplicable to a surety. The mortgage secured the payment of certain notes. Any act of the principal which changed the character of the notes secured, released the surety, unless

she consented to the change, for the reason that thereafter there was nothing left which the mortgage could apply to, and therefore it could not be enforced.

And the effect upon the mortgage is the same whether the time expressed in the note is extended or a new party is added to the note—thereafter there is no contract existent as to the surety.

In 2 Ency. Law and Proc., p. 224, it is pointed out that the rule on this subject is not the same in all the States, but that in some, the rule is, that a change in the note affects the note alone and does not affect the mortgage, while in others the change destroys both the note and the mortgage. But it is manifest that as to a surety, whether he is bound by the same paper that evidences the debt of the principal or by any kind of an instrument, if the contract of suretyship is changed the surety is discharged, and the surety's land given to secure his indemnity is also discharged. [1 Brandt on Suretyship (2 Ed.), secs. 34 and 35; 1 Pingrey on Mort., sec. 357; Metz v. Todd, 36 Mich. 473; Bank v. Burns, 46 N. Y. App. 170; Calvo v. Davies, 73 N. Y. 211; Christner v. Brown, 16 Iowa 130.] What is here said in no wise conflicts with Owings v. McKenzie, 133 Mo. 323, when that case is properly understood.

It will do no good to discuss the alleged technical character of the plaintiff's position, for the wisdom of the ages has proved that the liability of a surety is purely technical, and therefore those who deal with them and seek to charge them must be strictly technical in all their dealings with them, for, as they are only bound technically, they have a right to rely upon being technically released.

It follows that the judgment of the circuit court is right and must be affirmed. All concur.