MISSOURI FINANCE CORPORATION, A CORPORATION, RESPONDENT, v. MAURICE ROOS AND LOUIS J. NEWMAN, DEFENDANTS; EMMA FRIEDMAN, ADMRX. OF THE ESTATE OF MORRIS FRIEDMAN, DECEASED, APPELLANT.—47 S. W. (2d) 142.

St. Louis Court of Appeals.  Opinion filed March 8, 1932.

*Stern & Burnett, Samuel H. Liberman* and *Robert L. Aronson* for appellant.

870

*Harry Gleick, Simon Fisher* and *Harold D. Carey* for respondent.

BECKER, J.—This is an action upon a contract of guaranty. The suit was originally instituted against three defendants, two of whom remained in default throughout the case. The third defendant, Morris Friedman, died during the pendency of the suit and the cause was revived against Mrs. Emma Friedman, administratrix of his estate. The trial of the cause to the court and jury resulted in a judgment in favor of plaintiff and against the administratrix, and she in due course appeals.

The amended petition upon which the case was tried alleged in substance that on April 9, 1927, the plaintiff entered into a written agreement with the Bird Manufacturing Company, a Missouri corporation, whereby plaintiff agreed to purchase accounts receivable of the Bird Manufacturing Company under the terms stipulated in said agreement; that contemporaneously the defendants did jointly and severally guarantee the full, prompt and faithful performance by the Bird Manufacturing Company of the said contract and did guarantee the payments by the Bird Manufacturing Company of the accounts purchased by the plaintiff under the said contract; that in accordance with the terms of said contract the plaintiff purchased many accounts from the Bird Manufacturing Company; that in October, 1928, the Bird Manufacturing Company went out of business by making an assignment for the benefit of its creditors; that at said time plaintiff had purchased accounts totalling $7,524.88, all then unpaid; that there has been credited upon the said amount by way of guarantee reserve and payment a total of $2,442.98, leaving a balance of $5,081.90; that the Bird Manufacturing Company did not fully, promptly and faithfully perform its obligations under the agreement of April 9, 1927, in that said company did not transmit, pay or turn over immediately or at any time thereafter any collections made on the accounts purchased which were unpaid and outstanding at the time of the assignment aforesaid, nor at any time paid to plaintiff the amount of said accounts; and that plaintiff demanded payment of the said balance of $5,081.90; that defendants have failed to pay the same, and the prayer is for judgment for $5,081.90.

The answer of defendant Emma Friedman, administratrix, to the said amended petition, after admitting the execution on or about April 9, 1927, of the contract between the plaintiff and the Bird Manufacturing Company and admitting that Morris Friedman did at the same time execute his guaranty of the performance of said contract by the Bird Manufacturing Company and the payment by the Bird Manufacturing Company of the accounts mentioned in said contract and purchased by plaintiff, in substance denies that the Bird Manufacturing Company failed to carry out the contract

and the agreements set forth therein, as alleged by plaintiff, and denies that there is an unpaid balance. For further answer it is alleged that Morris Friedman is not liable on his agreement of guaranty of April 9, 1927, and has been released therefrom by reason of the fact that, without his consent or knowledge, said agreement was not performed by the parties according to the terms thereof, and that the defaults on the part of the Bird Manufacturing Company for which plaintiff seeks to hold Morris Friedman responsible as guarantor arose, not under that contract, but under a new and substituted agreement made without his consent, which altered and varied the terms of said contract in various respects; that although the original agreement provided that the remittances to the Bird Manufacturing Company from its customers on the accounts theretofore sold to plaintiff would not be mingled with the funds of the Bird Manufacturing Company and would be kept separate and apart therefrom, and would be transmitted immediately upon receipt to the plaintiff, and the manufacturing company should have no title or interest in and to the same and should act only as the agent of plaintiff, the plaintiff permitted and consented to the Bird Manufacturing Company mingling remittances on the accounts theretofore purchased with its own bank account and using the same and treating the same as its own property; and that the plaintiff and the Bird Manufacturing Company completely altered the relationship established by the said contract from the purchase by plaintiff of accounts receivable of the Bird Manufacturing Company to the lending by plaintiff to the Bird Manufacturing Company of an amount equal to 78 per cent of the face amount of the accounts assigned to plaintiff, with a requirement that the Bird Manufacturing Company repay said loans five weeks from the time the accounts receivable assigned were payable and with a charge of two per cent of the face amount of the assigned accounts for the use of said money; that although the original contract contained no provisions for compensation to plaintiff if the assigned accounts were not paid when due, plaintiff demanded and exacted additional compensation on assigned accounts in the amount of two per cent per month if said accounts were not paid five weeks from the date of assignment; that although the original contract provided that the plaintiff should retain an amount equal to one and one-third per cent of the amount of every account purchased, as compensation for the making of an audit of the books of the Bird Manufacturing Company, the plaintiff made no such audit but nevertheless exacted said one and one-third per cent of the amount of accounts purchased from the Bird Manufacturing Company; and that although the contract contained a warranty by the Bird Manufacturing Company that plaintiff would be promptly paid on the maturity date of the accounts

sold or within not more than ten days thereafter, plaintiff extended the time of performance of said obligations beyond the time of maturity and ten days thereafter. For final answer it is alleged that, although the contract of April 9, 1927, purports to be an agreement for the sale and purchase of accounts receivable, it was, in fact, a device and scheme to enable the plaintiff to lend money to the Bird Manufacturing Company to the extent of 78 per cent of the amount of accounts receivable assigned, said accounts being security for the loan, and to collect for the use of said money so loaned interest at the rate of 18 per cent per annum, contrary to the statutes; and that the Bird Manufacturing Company paid to plaintiff, between April 9, 1927, and October, 1928, usurious interest in the amount of $1,521.96; and that plaintiff has failed to credit said amount of usurious interest to the account of the Bird Manufacturing Company as required by law.

In its reply plaintiff, in substance, denied any modification of the guaranty of April 9, 1927, and denied that there was consideration for any new contract, and alleges that if there was any new contract the same was made with the knowledge of Morris Friedman.

For the purposes of this appeal we may view the situation between the parties, at the trial below, as practically admitting the allegations in plaintiff's petition, and that the sole issue in the case arose out of the allegations in defendants' answer, that the defendant Morris Friedman was released from the terms of his guaranty pleaded in plaintiff's petition, by reason of the fact that without his consent or knowledge said agreement was not performed by the parties agreeing to the terms thereof, and the defendant replying thereto denying there was any modification of the agreement of April 9, 1927, and alleging further that if there was any new contract modifying the original agreement, said new contract or modification was made with the knowledge of the guarantor, Morris Friedman.

The record discloses that the guarantor, Morris Friedman, was the father-in-law of the defendant Maurice Roos, who was the secretary and treasurer of the Bird Manufacturing Company; that Friedman and Roos lived in the same house and usually ate one or two meals a day together. Also Friedman was the brother-in-law of the defendant Newman, who was president of the Bird Manufacturing Company. Morris Friedman was vice-president of the Bird Manufacturing Company but took no active part in the management of the company.

Upon the issue as to whether or not there was a material change in the original contract between the plaintiff and the Bird Manufacturing Company, the sole material witness for plaintiff, Joel M. Jacobs treasurer of the plaintiff corporation, testified that after

the contract of April 9, 1927, was executed they purchased schedules of accounts of the Bird Manufacturing Company weekly, and according to the terms of said contract the purchasers made "their remittances for their purchases direct to the Bird Manufacturing Company and the Bird Manufacturing Company in turn transmitted the same checks to us. They would endorse the checks. Most of the payments were made by checks and the same checks would be turned over immediately upon receipt by the Bird Manufacturing Company." After a time, however, Mr. Roos of the Bird Manufacturing Company, made complaint to the plaintiff corporation that inasmuch as the Bird Manufacturing Company often had accounts of customers on its books besides the particular account of such customer that had been sold by them to the plaintiff company, it sometimes occurred that customers would send in checks covering part of an account which belonged to the plaintiff corporation and part of the account which belonged to the Bird Manufacturing Company, and Roos found "it was very impractical to carry on at this rate," and that "it would be very impractical to transmit checks received from customers" to plaintiff.

The witness Jacobs stated that "due to the fact that a lot of sales were being made from time to time and discounts were taken from the respective accounts, this would be very impractical or it would be more practical to settle in a period of a month or five or six weeks. I agreed to the suggestion and agreed that from then on the Bird Manufacturing Company would make settlement with the Missouri Finance Corporation directly by its own check every five or six weeks. That arrangement was in force from the time it was made until we stopped doing business with them."

On cross-examination with reference to when the change in the manner of handling the accounts occurred, witness Jacobs testified: "I cannot tell you when it was that the new arrangement was entered into whereby they paid their own checks directly. The first one paid independently was on July 18, 1927. The arrangement became effective prior to that, but the settlement was made on that date. They stopped remitting checks from customers around June 20. . . . From that time on settlements were supposed to be made every six weeks."

With reference to the defendant, Morris Friedman, this witness testified he did not know who was the vice-president of the Bird Manufacturing Company; that he was not present when Morris Friedman signed the agreement and that he never talked to him after the said agreement was signed. He further testified that no one else connected with their business talked to Morris Friedman excepting Mr. I. Kotner, but Mr. Kotner testified that he was a member of the board of the plaintiff corporation and knew Morris

Friedman personally for thirty years, but that he did not transact any negotiations on behalf of the plaintiff corporation for the guaranty that was entered into.

Witness Jacobs testified further that the two following letters, which were introduced in evidence, were signed by him and mailed to the defendant Morris Friedman:

"April 20th, 1927.

"Mr. Morris Friedman,

"c/o Friedman Loan & Merc. Co.,

"1825 Market Str.,

"St. Louis, Mo.

"Dear Sir:—

"Mr. Roos of Bird Mfg. Co., has suggested the impracticability of turning over to us the remittances received by them on the accounts purchased by us under contract dated April 9th, 1927, on which you appear as guarantor and subsequent schedules of accounts thereunder. His contention is that owing to the fact that the debtors do not pay at one time and the fact that there are returns and discounts deducted, it requires a burdensome amount of bookkeeping for them, making the whole situation unprofitable and unnecessarily time taking to himself and the Bird Mfg. Co.

"For this reason, he suggests that instead of turning over to us the remittances as they are received, the Bird Mfg. Co. should pay to us the total amount of the accounts purchased by us under any particular schedule of accounts, forty days after the date of such schedule of accounts or the purchase of the accounts set out therein and retain these remittances in the meantime.

"This suggestion is agreeable to us providing that it is agreeable to you, as a Guarantor of the Bird Mfg. Co., under guaranty dated April 9th, 1927, to make this change in the mode of handling these transactions.

"Mr. Roos is desirous of commencing the new method on our next purchase of accounts which will be April 25th, 1927, and we will therefore, be obliged to you if you will advise before that date whether or not the above contemplated change is agreeable to you; inasmuch as it is for the benefit of your company, we shall assume, unless we hear from you to the contrary within five days from the date of this writing, that you have no objections to the above change and shall in the future, handle all subsequent transactions in the manner above outlined.

"Very truly yours,

"MISSOURI FINANCE CORPORATION

"Per_____

"Treasurer."

"April 27, 1927.

"Mr. Morris Friedman,
"c/o Friedman Loan & Merc. Co.,
"1835 Market Str.,
"St. Louis, Mo.
"Dear Sir:—

"Not having had a reply from you to our letter of April 20th, in which we advised that Mr. Roos wished to change the method of paying the accounts purchased by us under contract dated April 9th, 1927, by remitting every forty days after the date of each schedule of accounts instead of remitting as these payments are received, and inasmuch as we advised you therein that not hearing from you within five days from the date of that letter to the contrary, we would assume the change to be unobjectionable and agreeable to you.

"We are therefore, advising you that we are going to assume that you have no objection to this change in the method of handling these accounts and the payments thereof and shall, commencing with the group of accounts to be purchased on May 2nd, 1927, being group No. 4, and all groups thereafter and allow the Bird Manufacturing Co. to retain the remittances received by them on each account until forty days after the date of said account and/or schedule under which the same was purchased and they are to pay us the full amount of accounts on such schedule at said time.

"Very truly yours,
"MISSOURI FINANCE CORPORATION
"Per_____
"Treasurer."

For the defendant, Maurice Roos testified that the change in the manner of handling the purchase of accounts was brought about by his complaining to Mr. Jacobs that since the Bird Manufacturing Company's customers paid their accounts within as short as five days after the invoices were sent out, and they immediately transmitted those checks to the plaintiff corporation, that the interest charge was exceedingly high; that Mr. Jacobs said, "well, it does figure a little high sometimes," and that it was then decided that instead of sending the checks over as they came in from the accounts, that the Bird Manufacturing Company was to keep such payments as it received from its customers and make settlement with the plaintiff company every six weeks by taking up a schedule. "We selected a six weeks' period because we figured that it would take about 30 to 40 days in which our accounts would fall due;" that they stopped remitting checks of customers on June 20, 1927, and after that date paid the plaintiff by the Bird Manufacturing Company's check every six weeks.

Max L. Raskin testified that he was bookkeeper and accountant for the Bird Manufacturing Company, and an endeavor was made to have the witness testify as to what the total amount of discount at which the plaintiff bought the various schedules of accounts from the Bird Manufacturing Company would have amounted to in the way of percentage of an interest charge if the transactions were viewed in the light of loans on sales accounts instead of purchases of accounts. On objection the witness was not permitted to testify thereto. The witness, on cross-examination, stated that he knew that the "Bird Manufacturing Company was collecting the money on accounts that had been sold to the Missouri Finance Corporation, and putting the money in their bank account, . . . and that it was with the consent or knowledge of Mr. Jacobs that it was being done. . . . I knew the money was not being remitted to the Missouri Finance Corporation and that they were using the money on their collections in their regular business."

Upon the record it is not controverted but that any loss suffered by the plaintiff was upon purchases of accounts after the Bird Manufacturing Company was permitted to keep the remittances sent to it by its purchasers and in turn paid the plaintiff for a complete schedule of accounts six weeks after the date of the purchase thereof by the plaintiff.

Plaintiff, at the close of the case, offered an instruction in the nature of a demurrer, which was overruled.

Appellant presents a number of assignments of error. We need note but one, namely, the overruling of defendant's demurrer at the close of the entire case. This point is well taken.

Plaintiff as a matter of law upon its own testimony must be viewed as conceding indulgences to the Bird Manufacturing Company under the contract of purchase and sale of accounts of April 9, 1927, in material respects. These admitted indulgences in effect changed the terms of the principal contract so that the original contract was put an end to and a new one substituted and this too without the actual consent of the guarantor Morris Friedman.

We note that the counsel for respondent insist that the alleged modification was merely an extension of time for payment and that in order for an extension of time to operate to discharge the guarantor the agreement must be valid and binding and founded upon good consideration, and that a mere indulgence to a principal will not extinguish the liability of a guarantor, even though without consent of the latter.

We readily concede this rule of law but the facts in the instant case do not bring it within the purview thereof. Here admittedly there is more than the mere extension of time of payment, for under the terms of the original agreement of purchase and sale of the

accounts, and in conformity with which the accounts purchased were first handled, the Bird Manufacturing Company was required to transmit, pay and turn over immediately any collections made on the accounts purchased by plaintiff, and all remittances "whether they be in the form of cash, check, draft or money order *will not be commingled with the funds of the seller but will be kept separate and apart therefrom,* and will be transmitted immediately upon receipt for negotiation, if such remittances shall be commercial paper, *it being agreed by the seller that it shall have no right, title or interest in or to the said remittances or any of them, but shall act in the collection and transmission thereof only as the agent of the buyer for that purpose."* Immediately after June 20, 1927, by agreement between plaintiff and the Bird Manufacturing Company, the Bird Manufacturing Company was permitted not only to retain all moneys remitted to it by its customers in payment of their accounts that had been sold to the plaintiff company, but to treat the same as funds belonging to it, so that thereafter remittances made to the Bird Manufacturing Company were accepted by it and commingled with its own funds. By this action the Bird Manufacturing Company was permitted to take funds which under the original agreement belonged to the plaintiff company, and which as such it was required to transmit directly and immediately to the plaintiff company, and to treat such funds as its own, and became a mere debtor therefor to the said plaintiff company. This change is clearly of a character which if made without the knowledge and consent of the guarantor is sufficient in law to release and discharge the guarantor.

"The general rule is that any alteration in the contract by the principals thereto releases the surety, unless the surety consents to it. And the rule is so strict that the courts will not stop to inquire whether the alteration was injurious or beneficial to the surety. The reason is that contracts of suretyship are strictly construed in favor of the surety, and he has a right to stand upon the exact contract he made, and no one, not even a court, can change it in any respect. [Bank v. Dunn, 62 Mo. 79; Moore v. Hutchinson, 69 Mo. 429; Bank v. Fricke, 75 Mo. 178; Morrison v. Garth, 78 Mo. 1. c. 427; Hord v. Taubman, 79 Mo. 1. c. 102; Evans v. Foreman, 60 Mo. 449; Kelly v. Thuey, 143 Mo. 1. c. 434, 45 S. W. 300.]" [Higgins v. Deering Harvester Co., 181 Mo. 300, 1. c. 309, 79 S. W. 959.]

Nor can we accede to the contention of the respondent that it may be inferred that Morris Friedman gave his consent to the change or modification because it wrote to Friedman notifying him of the changes contemplated.

"But consent to a material modification of the principal contract cannot be inferred from the mere fact that the guarantor had knowledge of the modification or that he did not dissent therefrom. . . ." [28 C. J. 999.]

And in Brandt on Suretyship (3 Ed.), sec. 379, the rule is stated as follows:

"If the surety knows of the extension at the time it is given, it is not necessary that he should object thereto in order to entitle him to his discharge. It is not enough to bind him that he is informed and is passive; . . . he is not required to object or protest; he must actively concur and consent to be bound by the terms of the new agreement." [See also Stearn on Suretyship (3 Ed.), 131; Sikes v. Malonee, 11 Ga. App. 632, 75 S. E. 988; Execs. of Riggins v. Brown, 12 Ga. 271, l. c. 276; Yaeger Flour Mill Co. v. Rawls, 41 S. C. 331, 19 S. E. 659.]

A case somewhat similar in facts to the instant case is that of Amer. Iron & Steel Mfg. Co. v. Beall, 101 Mo. 423. That was an action on a contract of guaranty. After the guarantor had agreed to one extension of the time of payment of the debt guaranteed, the creditor wrote the guarantor a letter saying that he would accept the debtor's promissory note by which the time of payment was again extended. To this letter no reply was made, and the note was thereafter accepted by the creditor. It was held that the guarantor was thereby discharged, since his silence could not be construed as a consent to the extension of time. The plaintiff in that case contended that the guarantor having made no reply to its letter it was induced to believe, and the guarantor intended to make it believe, that the accepting of the note from the creditor met with his approval and that his failure to object thereto operated as a tacit acquiescence and consent to the granting of the extension, and that the defendant by such silence did in fact acquiesce in and consent to such extension. The court, however, ruled that "the defendant's silence by declining to reply to the letter cannot be construed as an acquiescence or regarded as an agreement to give a further extension of time." [Citing Lambert v. Shetler, 71 Ia. 463; Lake v. Thomas, 84 Me. 208; Stewart v. Parker, 55 Ga. 56.]

In light of the pleadings in the case and the testimony adduced on behalf of the plaintiff admitting substantial variations in the carrying out of the terms of the original contract of April 9, 1927, and the lack of any testimony showing the consent of the guarantor, Morris Friedman, to such changes, the demurrer offered at the close of the entire case as to the defendant, Emma Friedman, administratrix of the estate of Morris Friedman, deceased, should have been sustained.

The judgment as to Emma Friedman, administratrix of the estate of Morris Friedman, deceased, should be reversed. It is so ordered. *Haid, P. J.*, and *Nipper, J.*, concur.