**CITIZENS BANK OF SMITHVILLE, Appellant,**

v.

**R.M. LAIR, Respondent.**

**No. WD 35554.**

Missouri Court of Appeals, Western District.

March 5, 1985.

Kristin L. Farnen, Gladstone, for appellant.

Robert H. Shaw, Platte City, for respondent.

Before PRITCHARD, P.J., and SHANGLER and BERREY, JJ.

BERREY, Judge.

Appellant appeals from defendant's motion to dismiss which was sustained at close of plaintiff's evidence.

In this court-tried case the appellant brought suit against respondent as guarantor on a promissory note executed by his son, Ricky Lair.

The note in question was executed April 29, 1980, in the principal sum of $5,500.00 at 14.6 percent annual interest. Interest after the date of maturity would be at the "maximum rate permitted by law, together with reasonable attorney's fees in the event [the] note is not fully paid at maturity and the same is placed in the hands of an attorney for collection." The note was collateralized by "growing crops" and due December 30, 1980. The note also provided:

No renewal or extension of this note, no release or surrender of any collateral or other security for this note or any guaranty of this note, no release of any person primarily or secondarily liable on this note, no delay in the enforcement of payment of this note or guaranty of this note and no delay or omission in exercising any right or power under this note or any guaranty of this note, shall affect the liability of any parties liable hereon.

The note defines "parties liable" to include the guarantor.

Respondent, R.M. Lair, executed a guaranty agreement on the back of the promissory note providing that the "undersigned waive notice of acceptance of this guaranty, acknowledge themselves as fully bound by all provisions of said Agreement, and expressly agree to pay all amounts owing hereunder, upon demand, without requiring any action or proceeding against debtors." The president of the Citizens Bank of Smithville testified that he did not explain the document to R.M. Lair but did tell him his obligation as a guarantor was that, "If Ricky didn't pay, he had to pay." On the date of signing, the bank president and R.M. Lair discussed the amount of money Ricky would need to farm his 1980 crops.

Ricky planted the intended crops and ultimately received checks totaling $12,076.50 drawn on the Continental Grain Company naming Ricky Lair and the Citizens Bank as co-payees. Ricky and the bank discussed the disbursement of the proceeds, and the bank issued portions of the proceeds to Ricky and other portions to repay earlier existing loans between Ricky and the bank. It is unclear whether R.M. Lair was guarantor or co-maker of the earlier loans. "Not one penny" of the proceeds was used to pay the note which is the subject of litigation in the instant case.

On January 30, 1981, one month after the original note's due date, the appellant entered into a new agreement with Ricky without the advice or knowledge of respondent, guarantor R.M. Lair. The new instrument was entitled "Extension Agreement" and called for repayment of the principal amount ($5,500.00) at the higher interest rate of 14.8 percent effective January 19, 1981, and due June 30, 1981.

Appellant alleges: (1) the new agreement did not constitute a novation of the original note, (2) the defendant consented to such an extension, (3) there is no evidence the plaintiff unjustifiably impaired the collateral, and (4) that plaintiff used due diligence in efforts to collect the note.

The trial court sustained the defendant's motion to dismiss at the close of the plaintiff's evidence and, therefore, the facts should be stated on the basis that the plaintiff's evidence is true. *M.H. Siegfried R. Est. v. City of Independence*, 649 S.W.2d 893, 894 (Mo. banc 1983). The facts are not in conflict and the question concerns their legal effect. The judgment will be affirmed if correct. *Id.*, at 895.

■ The liability of a guarantor is limited by the specific terms of the contract and

is entitled to strict construction of his obligation in his favor. He is not bound beyond the letter of his obligation and nothing may be implied against him. *Lange Co. v. Freeman*, 13 S.W.2d 1092, 1094 (Mo. App.1929).

"[I]t is well settled that the rights of a guarantor are strictissimi juris, and the contract of guaranty must be construed strictly according to its terms, and no stretching or *extension of its terms* can be indulged in order to hold the guarantor liable on his guarantee." *Zoglin v. Layland*, 328 S.W.2d 718, 721 (Mo.App.1959) (emphasis added); *see also: Pelligreen v. Century Furniture & Appliance Co.*, 524 S.W.2d 168, 172 (Mo.App.1975); *Bank of Slater v. Harrington*, 218 Mo.App. 645, 266 S.W. 496, 497 (1924).

The cases are legion that "when the intention is clearly expressed and defined in the written guaranty, the liability of the guarantor may not be extended beyond its express terms...." *Eberly v. Lehmer*, 48 S.W.2d 151, 153 (Mo.App.1932).

> The general rule is that any alteration in the contract by the principals thereto releases the surety, unless the surety consents to it. And the rule is so strict that the courts will not stop to inquire whether the alteration was injurious or beneficial to the surety. The reason is that contracts of suretyship are strictly construed in favor of the surety, and he has a right to stand upon the exact contract he made; and no one, not even a court, can change it in any respect.

*Beauchamp v. North American Sav. Ass'n*, 543 S.W.2d 536, 538 (Mo.App.1976), quoting *Missouri Finance Corporation v. Roos*, 226 Mo.App. 869, 47 S.W.2d 142, 146 (1932).

■ A material alteration in, or departure from the contract of guaranty without the guarantor's consent will discharge him. 38 C.J.S. *Guaranty* § 74, at 1239–40 (1943); *First State Bank v. Benson*, 613 S.W.2d 888, 890–91 (Mo.App.1981); *Cf. Robb v. N.W. Electric Power Cooperative*, 297 S.W.2d 385, 388 (Mo.1957) (regarding alteration of instruments generally).

■ Whether an alteration in a [guaranty] contract is material depends upon whether after the alteration it expresses the same contract, and whether it will have the same operation and effect as before. If the change enlarges or lessens the liability, it is material and vitiates the contract. *J.R. Watkins Co. v. Powell*, 93 Okl. 219, 220 P. 585, 586 (1923).

"Under the common law and statutes declaratory thereof, a change in the amount as representing the liability on a bill or note or other contractual instrument is a material alteration such as to discharge a non-consenting party." 3A C.J.S. *Alteration of Instruments* § 46, at 308 (1973). Likewise,:

> Where an interest clause is a material part of a ... note, ... any change of the instrument which alters the terms of the contract in this regard is material and vitiates it, as where a word or clause is added or inserted to make the instrument bear interest, when originally it did not, or where interest clause is stricken out. So it is a material alteration to change the rate of interest of the instrument whether this effects an increase or decrease in the rate,....

*Id.*, § 48, at 309; *see*: *Kircher v. Dunnington*, 325 Mo. 355, 29 S.W.2d 138 (1930).

■ There is no doubt that in the instant case the "Extension Agreement" extended the period for repayment of the original note from eight months to fourteen months at an increased interest rate of 14.8 percent [as opposed to the original rate of 14.6 percent]. There is also no doubt, according to the overwhelming weight of authority, that the alterations were material. The controlling question is whether or not the respondent consented to the alterations.

Appellant argues that if the guarantee agreement contains a provision which contemplates or authorizes a change in the terms of the principal obligation, a change within the scope of the agreement does not discharge the guarantor. 38 Am.Jur.2d *Guaranty*, § 83 (1968). Appellant argues

that this principle governs the situation where, as here, the guarantor agrees to be bound by all terms of the original note and one of the terms of the note provides for the guarantor's continuing liability in the event of renewal or extension. However, the terms to which appellant refers, events which will not affect the guarantor's liability, do not specifically mention the effect that an increase in interest has on the guarantor's liability. Through strained construction of the terms involved, appellant argues that the clause concerning interest to be charged after the maturity date of the note, when coupled with the guarantor agreeing to be bound by all provisions of the note, prove the guarantor's consent to the increased rate of interest. In light of the authorities holding that contracts of suretyship are strictly construed in favor of the surety, this court does not find the respondent consented to an increase of interest merely by signing the guaranty agreement.

■ Moreover, this court construes the "Extension Agreement" to be a *new note* and not a renewal or extension. The agreement was executed one month after the original due date, provided for an increased rate of interest, was unsecured by collateral, and provided for repayment period of six months. These alterations, when viewed together, render the second agreement so materially different from the original as to constitute a new agreement between Ricky and the bank. R.M. Lair was not a party to the new note and therefore is not required to satisfy any obligation arising thereunder. The evidence is clear that the guarantor did not know of the new note between his son and the bank. Had he been aware of the new note but did not actively concur and consent to be bound by its terms, he cannot be so bound. *Missouri Finance Corporation v. Roos, supra,* at 146, citing *Brandt on Suretyship,* (3rd Ed.) § 379.

■ Although having already concluded R.M. Lair is released from liability on the original note, this court believes it is important to address the issue of "impairment of collateral," as addressed by both parties' briefs. Section 400.3–606(1)(b), RSMo 1978, provides, "the holder discharges any party to the instrument to the extent that without such party's consent the holder … unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any party against whom he has a right of recourse."

It is undisputed that at the time the "Extension Agreement" was executed, Citizens Bank had disposed of all proceeds of the collateral on which the original note was based. The bank applied a portion of the proceeds to Ricky Lair's previous loans and paid portions to Ricky. It is unclear whether R.M. Lair was guarantor to any of the other loans. The note in question refers to the collateral generally as "growing crops per UCC–1 of even date" and contains a microscopically printed cross-collateralization clause.

The bank cites *Commerce Bank of St. Louis, N.A. v. Wright,* 645 S.W.2d 17 (Mo. App.1982), for the proposition that the defense of impairment of collateral is not available to a guarantor where the note specifically sets forth terms whereby the liable parties agree to pay the debt regardless of the use of the collateral. The terms regarding release or surrender of property in the *Commerce Bank* case were substantially similar to the terms of the Ricky Lair note set forth earlier in this opinion. But in addition, the note in the *Commerce Bank* case provided that the bank need not proceed against the collateral before proceeding against the debtor or other undersigned.

However, a bank is "obliged to act in good faith and with a reasonable degree of care." *Commerce Bank,* at 22. R.M. Lair may have consented to a good faith surrender or release of the proceeds from the "growing crops," but here, the bank applied the proceeds for its own benefit and applied them to previous loans, at least some of which were not guaranteed by R.M. Lair. It then executed an "Extension Agreement" with knowledge that the col-

lateral was no longer available and without advising the guarantor.

A similar problem was addressed in *Security Trust & Savings Bank v. June*, 38 Ariz. 513, 1 P.2d 970 (1931), and the facts bear full disclosure. June executed a note as an accommodation maker only and at the time of signing, the note was secured by crops to be grown in 1926 by defendant Helton. The crops were grown and harvested and twelve bales of cotton were delivered to plaintiff and sold for more than enough to satisfy the debt. Abstractly put in the instant case and *June*, at 971: If A executes a note and chattel mortgage to B and C becomes an accommodation maker or indorser, and A tenders the crops to B, may B disburse the proceeds as he elects or is he bound so far as C is concerned, to first pay the note guaranteed by C and specifically secured by the mortgage? The court in *June* held, "When, however, the collateral is pledged for the security of a specified debt, for which a guaranty has also been given by a surety, the majority rule is that the proceeds of the collateral cannot be first applied by the creditor to a debt not embraced by the pledge, without the consent of the surety." *Id.*, at 972.

On the basis of the facts in the instant case, this court does not find that R.M. Lair consented to the actions of the bank. Even if consent is found, the bank did not act in good faith with regard to the interest of the guarantor. Again, the bank knew the collateral was depleted at the time of the "Extension Agreement" but yet executed the agreement without the knowledge of the guarantor. In *Beauchamp v. North American Sav. Ass'n, supra*, at 537, the court cited *Citizens' Trust Co. v. Tindle*, 272 Mo. 681, 199 S.W. 1025, 1029 (banc 1917), noting that a guarantor is favored by the law and his obligations "will not extend beyond what he is *fairly* bound to by the precise terms of his contracts." In light of this policy, the guarantor should not be injured on the basis of general language in a note designed to protect the bank from loss in every situation imaginable. Good faith, at the very least, re-

quires the bank to inform a guarantor of the occurrence of events, within its knowledge, by which it realizes the guarantor's interests are in jeopardy.

Because an adverse ruling on any of appellant's four points would be dispositive, we need not address appellant's additional points.

Judgment affirmed.

All concur.