Jake R. KIRKLAND, Plaintiff–Appellant,

v.

Ronald TODD, Richard Munday, Roger Vestal, Hobart Stewart, and William (Bill) Oliver, Defendants–Respondents.

No. 18364.

Missouri Court of Appeals, Southern District, Division One.

July 13, 1993.

Stuart H. King, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for plaintiff-appellant.

David E. Schroeder, Fitzsimmons, Schroeder, Nelson & Reynolds, P.C., Springfield, for defendants-respondents Todd, Munday, Vestal & Oliver.

Thomas W. Millington, Schroff, Glass & Newberry, P.C., Springfield, for defendant-respondent Stewart.

MONTGOMERY, Judge.

Plaintiff brought this action for a deficiency on a promissory note made by Bear Park, Inc., and guaranteed by Defendants. The deficiency arose after foreclosure of the deed of trust which secured the note. After a trial to the court, judgment was entered in favor of Defendant guarantors. Plaintiff appeals from that judgment. We affirm.

■ The trial court entered findings of fact and conclusions of law and concluded, *inter alia*, "defendants' obligation on the guarantee of [Bear Park's promissory note] was exonerated by virtue of the material alteration and change in terms of the outstanding indebtedness, including, but not limited to, substitution of the primary obligor and material changes in the repayment terms reflected by the Brunsons' indulgence in late payments and acceptance of multiple payments over an extended period of time." Plaintiff's second point relied on attacks this finding. Because this point is dispositive of the case we need not discuss the remaining two points. The judgment in a court-tried case is to be affirmed if it could properly have been reached on any reasonable theory, including any single ground stated in the conclusions of law. *Trust Estate Under Last Will v. Welch*, 842 S.W.2d 567, 571 (Mo.App.1992).

At trial the essential facts were not seriously disputed. However, an understanding of the numerous parties and transactions involved can best be achieved by presenting the facts in chronological order.

October 1, 1985  Wallace and Helen Brunson contract with Bear Park to sell the corporation certain real estate in Taney County, Missouri, for $366,200.

October 7, 1985  At the closing, Bear Park delivered the Brunsons a promissory note in the face amount of $285,000 in partial payment of the purchase price. The note was dated October 7, 1985, and was secured by a deed of trust on the Taney County property.

At the same time, Defendants personally executed a guaranty agreement on the reverse side of the note. Their agreement recited, "WE, the undersigned, hereby guarantee payment of the within note according to its terms and provisions." At that time Defendants were shareholders of Bear Park and served on its board of directors.

According to the note terms, Bear Park was obligated to pay Brunsons 10 percent interest with quarterly payments of principal and interest. The first payment of $68,800 was due on January 7, 1986, and the remaining payments were $7,226.80 each commencing on April 7, 1986. The note contained an acceleration clause and matured on January 7, 2001 when the unpaid balance became due and payable.

January 7, 1986 Bear Park failed to make the first quarterly payment of $68,800.

January 23, 1986 Marvin Motley, attorney for the Brunsons, made written demand upon Bear Park for the amount in default. After no response, Motley initiated foreclosure proceedings.

February 21, 1986 By letter of this date Motley confirmed his clients' agreement with Bear Park that he would stop the foreclosure upon payment of $7,000 in lieu of the $68,800 payment then in default. In addition, the letter confirmed that the remaining quarterly payments of $7,226.80 "will have to be increased as this payment was based upon the assumption that the sum of $68,800.00 would be paid on January 7, 1986." The record reveals no evidence that Defendants consented to this agreement. Bear Park paid $7,000 and the foreclosure was canceled.

April 7, 1986 The quarterly payment due this date was not paid. Brunsons did not recalculate the amount of the quarterly payments, but Mrs. Brunson testified Mr. Motley may have done so and notified Bear Park of the amount. The record does not reveal the amount of the recalculated payment if Motley did so.

April 22, 1986 By letter of this date, Motley advised Defendants the note was in default and made demand upon the guarantors for payment of the amount due. The demand failed to state the amount due.

May 28, 1986 Defendants transferred their shares of stock in Bear Park to Bob Francis. The same day Bear Park filed a petition under Chapter 11 of the Bankruptcy Code.

September 27, 1986 Bear Park entered into a contract for the sale of the property in question to Clevenger Investment Management Corp. (CIMC). The purchase price was the amount due on the Brunsons' note which CIMC agreed to assume and pay. The contract was contingent upon approval of the bankruptcy court.

After the $7,000 payment of February 24, 1986, Bear Park made no payments to Brunsons up to September 27, 1986. Other than the demand of April 22, 1986, no further demands were made upon Defendants to pay the note.

January 2, 1987 Bear Park filed an application in bankruptcy court for approval of the sale to CIMC. Bear Park alleged Brunsons were agreeable to the assumption of the debt and had no objection to the sale.

January 8, 1987 Bob Francis paid $9,000 to Brunsons.

March 11, 1987 A hearing was held in bankruptcy court on Bear Park's application for sale. Brunsons appeared at the hearing and offered no objections to the sale. The bankruptcy court approved the sale of the property to CIMC.

March 30, 1987, June 7, 1987, and June 30, 1987 Brunsons received payments from Bob Francis on these dates for $9,000, $3,000 and $3,000, respectively.

March 18, 1988 Brunsons assigned their interest in the note and deed of trust in question to Plaintiff in exchange for his payment of $285,000.

Plaintiff received no payments following his purchase of the note and testified he made no demands on Defendants for payment.

July 11, 1988 A foreclosure was held and Plaintiff purchased the property in question for $280,000.

Plaintiff claimed at trial the foreclosure resulted in a deficiency of $36,454.84 plus interest, expenses and attorney fees.

Plaintiff's second point claims the trial court erroneously determined that Defendants' liability on the guaranty was exonerated by material changes of Defendants' obligations under their guaranty and the

promissory note because such determination was unsupported by any evidence and by Missouri law.

Our review of this nonjury matter is under Rule 73.01(c). As that rule is interpreted, this Court is to affirm the trial court's determination unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The liability of a guarantor is limited by the specific terms of the contract, and the guarantor is entitled to strict construction of his obligation in his favor. He is not bound beyond the letter of his obligation and nothing may be implied against him. *Citizens Bank of Smithville v. Lair*, 687 S.W.2d 268, 269–70 (Mo.App.1985). Any material alteration of the guarantor's obligation under the guaranty contract will discharge the guarantor, unless the guarantor has consented to such alteration. *Lemay Bank & Trust Co. v. Lawrence*, 710 S.W.2d 318, 322 (Mo.App.1986).

"The general rule is that any alteration in the contract by the principals thereto releases the surety, unless the surety consents to it. And the rule is so strict that the courts will not stop to inquire whether the alteration was injurious or beneficial to the surety. The reason is that contracts of suretyship are strictly construed in favor of the surety, and he has a right to stand upon the exact contract he made; and no one, not even a court, can change it in any respect...."

*Missouri Finance Corp. v. Roos*, 226 Mo. App. 869, 47 S.W.2d 142, 146 (1932) (quoting *Higgins v. Deering Harvester Co.*, 181 Mo. 300, 79 S.W. 959, 960 (1904)).

■ Whether an alteration in a guaranty contract is material depends upon whether after the alteration it expresses the same contract, and whether it will have the same operation and effect as before. If the change enlarges or lessens the liability, it is material and vitiates the contract. *Smithville*, 687 S.W.2d at 270.

■ In view of these principles, we agree with the trial court's determination that the Defendants' liability as guarantors was discharged by a material alteration of the terms of the promissory note without their consent. Defendants guaranteed the payment of the note "according to its terms and provisions." The note called for a quarterly payment of $68,800 on January 7, 1986, which was not paid. After written demand on January 23, 1986, to Bear Park for the amount in default, Mr. Motley commenced foreclosure proceedings. Those actions were sufficient to constitute an election by the mortgagee to accelerate payment of the entire debt. *See Spires v. Lawless*, 493 S.W.2d 65, 73 (Mo.App.1973). Therefore, at some point between January 23, 1986, and February 21, 1986, the Brunsons exercised their option to declare the note due and payable.

By February 21, 1986, Bear Park and Brunsons had entered into a new agreement changing the terms of the original obligation which had matured after the option to accelerate was exercised. The new agreement allowed a payment of $7,000 in lieu of the quarterly payment of $68,800. In addition, Mr. Motley's letter of February 21, 1986 confirmed the parties' further agreement that the remaining quarterly payments would be increased because $61,800 remained unpaid from the delinquent January 7, 1986, payment. Thus, a new contract between the debtor and creditor was substituted for the matured note. The terms of the new agreement were made without the consent of the Defendants. Even assuming Defendants had knowledge of the new agreement, they are not bound by it without their consent. *Smithville*, 687 S.W.2d at 271.

Defendants had a right to stand on the exact contract they made with Brunsons. The altered terms of the note were material because the changes enlarged Defendants' liability to pay interest on the sum of $61,800 for a period of time well beyond January 7, 1986.

In *First State Bank v. Benson*, 613 S.W.2d 888 (Mo.App.1981), a guarantor's

liability was discharged when a demand note was altered by an agreement calling for weekly payments. The guarantor did not consent to the alteration. The Court said, "A new contract between the creditor and debtor was substituted for the demand note. Appellants had a right to rely upon a demand being made for payment of the original obligation, and if on nonpayment, they were rendered liable to pay and did pay as per their guaranty, they could immediately pursue any remedies against the principal debtor." *Id.* at 891.

Like the guarantor in *Benson*, Defendants here had a right to rely upon a demand for the payments according to the terms of the original obligation. Instead, the creditor and debtor entered into a new agreement changing the terms of the original obligation. This material alteration was completed without the consent of Defendants, thereby extinguishing any guarantor liability of Defendants.

The judgment of the trial court is supported by substantial evidence and does not erroneously declare or apply the law.

Judgment affirmed.

CROW, P.J., and SHRUM, J., concur.