The BOATMEN'S NATIONAL BANK OF ST. LOUIS, Plaintiff/Respondent,

v.

Donald V. NANGLE and Jeanne Nangle, Defendants/Appellants.

No. 66585.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 2, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 12, 1995.

Arthur G. Muegler, Jr., St. Louis, for appellants.

Ronald A. Norwood, James V. O'Brien, Lewis, Rice & Fingersh, L.C., St. Louis, for respondent.

PUDLOWSKI, Judge.

This is an appeal from an order of the circuit court granting Boatmen's National Bank of St. Louis (Boatmen's) a new trial after a jury verdict against Boatmen's on its claim against a guarantor and his wife [1] for the debts of a defaulting obligor. The circuit court granted a new trial on the basis that two of defendant's instructions should not have been given. Guarantor alleges that Boatmen's failed to make a submissible case and that guarantor should be considered discharged from his obligation. We affirm.

The essential facts are not in dispute. In 1983 Mr. White, a businessman, engaged in a project to repair, renovate, and operate a Quality Inn Motel. White's attorney, the guarantor and defendant in this action, formed a corporation for White and solicited Quality Inn for an operating agreement. Guarantor used $75,000 of his own funds as a down payment for the operating agreement, thereby becoming a creditor of White's corporation.

White needed still more financing and, therefore, approached his friend, Lichtenstein, who was Chairman of the Board of CharterBank of St. Louis, N.A. (CharterBank). On January 5, 1984, CharterBank approved a $200,000 loan at 13% interest to White's corporation as a favor to him, however, it required guarantor's signature so that the bank's portfolio would "look better." Because guarantor believed White to have substantial personal assets, and because he was friends with White and Lichtenstein, he

1. For easy reading the guarantors will be referred to in this opinion as guarantor.

thought he would never be held to his promise to guarantee the note.

In December of 1984, CharterBank increased the loan amount to $250,000 at 15%. When it did so, it marked the old note "Paid" and issued a new note.

On January 28, 1985, Boatmen's parent, a holding company called Boatmen's Bankshares, Inc. (BBI), merged with CharterBank's parent, a holding company called CharterBank Corp. (CC). BBI was the surviving institution, holding both Boatmen's and CharterBank after the merger.

On March 18, 1985, Boatmen's and CharterBank merged, and Boatmen's became the surviving institution.

On July 8, 1985, Boatmen's replaced the second CharterBank loan to the corporation with its own loan in the amount of $250,000, marking the CharterBank loan "Paid" and issuing a new note.

Beginning on October 7, 1985, Boatmen's repeatedly replaced its own loan to debtor with others for $250,000, each time marking them "Paid" and issuing a new note. It did so five times, on October 7, 1985, January 6, 1986, July 8, 1986, November 5, 1986, and February 3, 1987.

The corporation defaulted on the February 3, 1987, note, leaving a balance of $233,500. Boatmen's then sued guarantor for $233,500, plus interest. A jury found against Boatmen's and for guarantor. The trial court then granted Boatmen's motion for new trial on the basis that two of defendant's instructions should not have been given.

Guarantor now appeals, alleging four grounds of error: (I) that Boatmen's failed to show it had a legal interest in the guaranty agreement; (II) that Boatmen's could not make a submissible case on the default of the February 3, 1987, loan because the guaranty contract pertained only to CharterBank loans, and not Boatmen's loans; (III) that the marking of the CharterBank loans as "Paid" discharged guarantor from his obligations; and (IV) that the alteration of the terms of the original note increased guarantor's risk and should operate to release his obligations. We find no merit in any of these contentions.

## I.

Guarantor alleges that Boatmen's failed to establish that it had a legal interest in the guaranty agreement between guarantor and CharterBank. Boatmen's counters that this element was satisfied when it introduced evidence of the March 18, 1985, merger between CharterBank and Boatmen's. However, guarantor contends that the true owner of this guaranty agreement asset could be BBI, Boatmen's parent, or perhaps some other subsidiary of BBI. CharterBank's former parent, CC, merged with BBI before the later CharterBank/Boatmen's merger. Guarantor's theory is that the rights to the guaranty contract asset may have shifted out of CharterBank during the first merger. If so, when Boatmen's later merged with CharterBank, Boatmen's would not own the asset. Guarantor does not offer a shred of evidence for his asset shifting theory. We deem that the evidence of the merger between Boatmen's and CharterBank is sufficient for a *prima facie* showing that Boatmen's has rights in all of CharterBank's former assets, including the guaranty agreement. Point denied.

## II.

Guarantor next alleges that the guaranty agreement covered only loans made by CharterBank, and not the February 3, 1987, loan made by Boatmen's, which is the loan in default. The terms of the guaranty agreement read:

NOW, for value received, ... the undersigned jointly and severally for themselves, their heirs, executors and administrators, hereby guarantee to said Bank, its successors and assigns, the prompt payment as they may severally mature of any or all loans made, or which may be made, to said Borrower by said Bank, as well as any and all renewals thereof and all indebtedness that is now or at any time hereafter may be or become owing from said Borrower to said Bank not exceeding in the aggregate $200,000.00

This instrument is intended to be and shall be a continuing guaranty and agree-

ment and shall apply to and cover all loans, discounts or renewals thereof made by said Bank and all indebtedness of any kind due to said Bank from said Borrower prior to notice in writing given to the Cashier of said Bank by the undersigned that they will not be liable upon any further loans or discounts accepted or indebtedness incurred after the receipt of such written notice.

Guarantor's position is that this contract, on its face, only covers loans made by CharterBank: "the undersigned ... hereby guarantee to said Bank ... the prompt payment ... of any or all loans made ... by said Bank." "[B]y said Bank" obviously refers to CharterBank in this agreement between guarantor and CharterBank.

■ However, Boatmen's contends that the February 3, 1987, loan made by Boatmen's also constitutes a loan by "said Bank," by operation of federal law. We agree with Boatmen's. We acknowledge that guarantors are favored in law, and that courts are loathe to stretch a guaranty agreement beyond the letters of its language. *See Beauchamp v. North American Sav. Ass'n,* 543 S.W.2d 536, 538 (Mo.App.1976). Yet, we are bound by federal statute to consider Boatmen's, the receiving institution of the Boatmen's/CharterBank merger, to be the same corporation as CharterBank:

> The corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiving association and *such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger.* All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises,

and interests, including appointments, designations, and nominations, and all other rights and interests ... in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger, subject to the conditions hereinafter provided. (our emphasis).

12 U.S.C.A. § 215a(e) (1989). After the merger, Boatmen's becomes CharterBank in form and substance by operation of federal law, and succeeds to all of CharterBank's rights. Thus, we find that guarantor is *prima facie* liable for all Boatmen's loans made to the debtor corporation after the merger, just as he was liable for all CharterBank loans made to debtor before the merger. Point denied.

### III.

■ In his third point, guarantor claims that the marking of debtor's first note owed to CharterBank as "Paid" discharged guarantor from all future obligations. This is patently false. Although the payment and surrender of the first note may have discharged the debtor corporation from liability for payment of that note, *see* § 400.3–605(1)(b) RSMo 1986,[2] it is clear that the terms of the guaranty agreement contemplate liability for all future loans made to debtor, and transcend any particular note. The guaranty agreement states that his signature guarantees:

> any or all loans made, or which may be made, to said Borrower by said Bank, as well as any and all renewals thereof and all indebtedness that is now or at any time hereafter may be or become owing from said Borrower.

This provision makes it clear that the release from any particular note in no way affects guarantor's general and continuing obligation on other loans made to borrower. "A continuing guaranty contemplates a series of transactions between debtor and creditor, rather than a single debt." *Boatmen's Bank v. Community Interiors, Inc.,* 721 S.W.2d 72, 79–80 (Mo.App.E.D.1986). Point denied.

---

2. Repealed by L.1992 S.B. 448.

## IV.

In his final point, guarantor alleges that changes in the amounts and terms of the several notes increased guarantor's risk and, therefore, should discharge guarantor. "The general rule is that any alteration in the contract by the principals thereto releases the surety, unless the surety consents to it." *Beauchamp v. North American Sav. Ass'n,* 543 S.W.2d 536, 538 (Mo.App.1976), *quoting Missouri Finance Corporation v. Roos,* 226 Mo.App. 869, 47 S.W.2d 142, 146 (1932). Guarantor asserts that there were four material changes: (a) change in lender, (b) change in note amount, (c) change in interest rate, and (d) change in length of repayment period.

█ The change in lenders was not a material change under the terms of the guaranty contract. Guarantor asserts that his and White's personal relationships with CharterBank, and CharterBank's small size, made his guaranty a low risk guaranty. He feels the substitution of Boatmen's as creditor increased his risks. However, a change within the scope of a guaranty agreement does not discharge the guarantor. 38 Am. Jur.2d *Guaranty,* § 83 (1968). Possible changes in creditors were clearly within the scope of this guaranty agreement: "the undersigned ... hereby guarantee to said Bank, its *successors and assigns....*" (Our emphasis). Therefore, a change in creditors does not constitute a material alteration of that contract.

█ Similarly, changes in amounts, rates, and repayment periods of the several notes did not materially alter the guaranty agreement. A bank may enforce an obligation clearly assumed. *Royal Banks of Missouri v. Fridkin,* 819 S.W.2d 359, 362 (Mo. banc 1991). Guarantor's liability never exceeded $200,000, the amount he clearly assumed in the original guaranty agreement. Even though subsequent notes were issued in the amount of $250,000, the risks contemplated in the original agreement were not increased. The contract reads:

> If the indebtedness of the Borrower to the Bank shall at any time exceed the sum last mentioned [$200,000.00], this guaranty shall, nevertheless, extend to and cover the amount of all indebtedness of the Borrower which may at any time exist, but the liability of the undersigned shall not be in excess of the sum last mentioned [$200,-000.00]. . . .

The fact that the several notes did not share identical repayment terms did not change the terms of the guaranty agreement. Only one guaranty agreement was executed. It clearly covered all loans made to the debtor corporation, as described previously. The continuing guaranty agreement did not contain any restrictions on the terms or types of loans that it covered. Therefore, any changes in the repayment terms of the notes did not affect the guarantor's signed contractual liability for "any or all loans made, or which may be made."

This case is distinguishable from *Citizens Bank of Smithville v. Lair,* 687 S.W.2d 268 (Mo.App.W.D.1985). In that case, unlike this case, there was no contractual language contemplating new loans; therefore, the issuance of new credit under new terms which was considered a material change in the guaranty arrangement in that case is not controlling in this continuing guaranty arrangement. *See Boatmen's Bank v. Community Interiors, Inc.,* 721 S.W.2d 72, 79–80 (Mo.App.E.D.1986). We also note that guarantor, an attorney, never exercised his contractual right to terminate the operation of the agreement as security for future advances. Had guarantor become averse to his broad contractual liability for up to $200,000 on all of debtor's future loans, he could have terminated it at any time upon notice to the bank cashier. Point denied.

█ We determine from the above analysis that Boatmen's has made a submissible case and that it was not error for the circuit court to order a retrial. Because we uphold this order for retrial, an additional observation is appropriate. We are concerned because Boatmen's petition demands $233,500, plus interest, from guarantor. However, as discussed above, guarantor's maximum exposure was capped at $200,000 by the terms of his signed agreement. Therefore, we instruct the trial judge to grant leave to amend Boatmen's demand in Count III of its peti-

tion from $233,500, plus interest, to $200,000, plus interest.

The order for a new trial is affirmed.

SMITH, P.J., and WHITE, J., concur.