

# Missouri Court of Appeals

## Southern District

### Division Two

2 MIKES, INC.,                          )
                                        )
    Plaintiff-Appellant,           )
                                        )
vs.                                     )    No. SD32688
                                        )
TURNING LEAF PROPERTIES, LLC.,          )    **Filed: March 5, 2014**
                                        )
    Defendant-Respondent.          )

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Mark E. Orr, Circuit Judge

## <u>AFFIRMED</u>

This is an appeal from a declaratory judgment. 2 Mikes, Inc. ("Plaintiff") leased a bar and restaurant from Turning Leaf Properties, LLC ("Defendant") in March 2011. Based mostly upon written communications the parties exchanged in December 2011, Plaintiff filed a petition seeking a judicial declaration that the parties had agreed to a modification of the terms of their lease. After a bench trial, the trial court entered a judgment declaring that the lease 'ha[d] not been modified[.]"

In two points relied on, Plaintiff contends the judgment was against the weight of

1

the evidence.[1] Point I contends the trial court erred in ruling that "there was no lease modification agreement" because "the parties exchanged letters that contained an offer, counter-offer and acceptance[,]" Defendant "instructed [its] attorney to draft a written lease modification according to the terms the parties agreed on, and [Defendant] accepted the modified rent amount for four weeks." Point II alternatively contends that the lease was "at least partially modified" because "[o]n at least two, if not three, of the four matters the parties were negotiating on, there was an unambiguous, precise and definite agreement that modified the lease."

Because the trial court could reasonably find from the evidence presented that Defendant had conditioned any modification of the lease upon its attorney first drafting

---

[1] Although Plaintiff's points claim the judgment is against the weight of the evidence, the argument portion of the brief fails to follow the steps necessary to present such a claim.

"[A]n against-the-weight-of-the-evidence challenge requires completion of four sequential steps:

(1)  identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2)  identify all of the favorable evidence in the record supporting the existence of that proposition;

(3)  identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4)  demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010). While such a challenge "involves some consideration of evidence contrary to the judgment," we still defer to the trial court on its factual determinations and credibility determinations. *Id.* at 186. Ultimately, the appellant must "demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition." *Id.* at 187. However, because Defendant's brief addresses the claims on their merits, we will address the claims, as best we understand them, *ex gratia*. Cf. *Comp & Soft, Inc. v. AT & T Corp.*, 252 S.W.3d 189, 194 (Mo. App. E.D. 2008) ("the court prefers to decide cases on their merits whenever possible and therefore elects to review this appeal *ex gratia*").

an amendment to be executed by the parties, and such an execution did not occur, we deny the points and affirm the judgment.

## Facts and Procedural Background

No party requested written findings of fact, and the judgment contains none. "Where the trial court does not include findings of fact in its judgment, the factual issues are assumed to have been found in accordance with the result reached." ***Glass v. Transamerica Life Ins. Co.,*** 322 S.W.3d 556, 562 (Mo. App. S.D. 2010).

The only witness at trial was Plaintiff's president, Dr. Michael Hynes. Dr. Hynes testified that the lease was "dated March 31st, 2011[,]" and the rental rate was $700 per week. Defendant cross-examined Dr. Hynes and offered exhibits during that cross-examination that were received into evidence.[2] In a November 28, 2011 memorandum, Dr. Hynes informed Defendant that Plaintiff's restaurant-bar was losing money. As a result, he asked Defendant to "lengthen the term of the lease" and "reduce the rental costs for the near term[.]"

Defendant responded in an undated letter from Clint Smith that stated, *inter alia*:

> In response to your memo dated 11/28/2011, following are responses to your questions and requests.
>
> . . . .
>
> We do however understand that you are requesting a reduction in rent and a lease term extension in hopes to be able to recover some of your losses. We are willing to agree to the following:
>
> 1.  A reduction in rent from $700.00 per month [sic[3]] (scheduled to being [sic] Jan. 3, 2012) to $450.00 per month [sic] for the months of January 2012, February 2012, and March 2012. The rent from April 2012 through the end

---

[2] All of the documents referenced in this opinion were received into evidence by the trial court.
[3] As later acknowledged, the reference to $700 per "month" was in error; during the relevant time period, the lease provided rent of $700 per week, not $700 per month.

3

of the lease would continue at the amounts listed in the lease.

2. Lengthen the term of the base lease agreement for an additional two years.

3. Allow you to pay the $2,300.00 (for last month's rent deposit) scheduled for Jan. 3, 2012 on Jan. 3, 2013.

Please let us know if these changes to the lease are acceptable to you so that we may have our attorney draft an amendment as soon as possible. *We would require the amendment be executed before we make any of the changes*, therefore time is of the essence.

(Emphasis added.)

Dr. Hynes's response, dated December 7, 2011, stated in pertinent part:

I would like you to consider making some minor changes to your proposal.

Item 1. extending the rent reduction to July 1, 2012, six months vs. the three months you suggested;

Item 2. lengthen the term of the lease by an additional five years vs. the two years you suggested;

Item 3. is acceptable as you suggested and is very helpful and appreciated;

[N]ew Item 4. at the end of the lease periods we would have right of first refusal to continue leasing the area.

A letter from Mr. Smith to Dr. Hynes followed on December 9, 2011 and stated,

*inter alia*:

Please note that I made an error in our memo to you responding to your memo dated 11/28/11. . . .

Obviously, the 'per month' stated should have been 'per week'.

In response to your memo dated 12/07/11, following are points that we will agree on.

4

1.	A reduction in rent from $700.00 per week (scheduled to begin Jan. 3, 2012) to $450.00 per week for the months of January, 2012, February 2012, March 2012, April 2012, May 2012, and June 2012.  The rent from July 2012 through the end of the lease would continue at the amounts listed in the lease.

2.	Lengthen the term of the base lease agreement for an additional five years.

3.	Allow you to pay the $2,300.00 (for last month's rent deposit) scheduled for Jan. 3, 2012 on Jan. 3, 2013.

4.	Add a first right of refusal clause to continue the lease at the end of the lease period.

. . . .

I will forward this letter to our attorney and have him draft an amendment to the lease and get it to you for execution as soon as possible.

Instead of waiting for that draft, Dr. Hynes drafted a proposed lease addendum and sent it to Defendant.  Mr. Smith responded with a letter dated December 14, 2011, which stated in relevant part:

This letter is in response to your memo dated 12/07/11.

We appreciate your attempt at the amendment, however Don Ingrum [Defendant's attorney] is working on the lease amendment according to the terms detailed in our letter dated 12/9/11 (attached).  You indicated at that time that our terms were satisfactory.  Once Don Ingrum has a draft, I will forward it to you for your review.

A subsequent letter from Mr. Smith to Dr. Hynes, dated January 13, 2011, stated:

Please find enclosed a "First Amendment to Lease Agreement".  After consulting with our attorney, these are the changes we will agree to.  Please review and let me know if you have any questions.  Also, please remember that until we get this amendment signed, we expect the terms of the current lease to remain in effect.

Dr. Hynes testified that when he received the letter with the amended lease agreement, he observed what he thought were differences from what the parties "had

5

agreed on." He "immediately wrote to [Defendant] and said something went wrong here and this is not acceptable."

Plaintiff's Exhibit 8, at least as filed with this court, consisted of photocopies of the front side of four checks drawn on Plaintiff's account and payable to Defendant. Each check was in the amount of $450. Two were dated January 18, 2012, one was dated January 28, 2012, and the fourth check was dated January 31, 2012. The checks were signed by Dean Fagan. Dr. Hynes testified that Mr. Fagan worked for both Plaintiff and Defendant. Dr. Hynes testified that Defendant then "filed an eviction notice" as Plaintiff "did not pay the $700 rent." Dr. Hynes replied that he would "pay the $700 rent" and informed Defendant that they would "argue over that later."

The trial court took the case under advisement and gave the parties an opportunity to file written suggestions in support of their respective positions. After the parties did so, the trial court found "the issue in favor of Defendant-that the [lease] has not been amended" and ordered Defendant to submit a proposed judgment. The trial court's judgment was entered on February 25, 2013. It stated:

> 1. The terms of the Lease between the parties dated March 31, 2011, have not been modified, and more specifically:
>
>    A. The rent under the terms of the Lease has not been modified;
>
>    B. The terms of the Lease regarding the rent deposit, length of the lease, and the right of first refusal if the building is sold have not been modified.
>
> 2. Costs are taxed to [Plaintiff].

Plaintiff filed a motion for new trial on March 21, 2013. The record does not indicate any ruling on the motion by the trial court. As a result, the motion was deemed overruled 90 days after it was filed under Rule 78.06,[4] and this appeal timely followed.

**Applicable Principles of Review and Governing Law**

We "will affirm the judgment of the circuit court unless it misapplied or erroneously declared the law, or the judgment is not supported by substantial evidence, or the judgment is against the weight of the evidence." *JAS Apartments, Inc. v. Naji*, 354 S.W.3d 175, 182 (Mo. banc 2011). "We must defer to the trial court's factual determinations, reviewing the evidence in a light most favorable to the judgment and disregarding all contrary evidence." *Langdon v. United Restaurants, Inc.*, 105 S.W.3d 882, 886 (Mo. App. W.D. 2003). "[Q]uestions of law are reserved for the independent judgment of the appellate court and are reviewed without deference to the circuit court's determination." *Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 203 (Mo. App. W.D. 2006).

"The basic elements of a contract are offer, acceptance and consideration. In order to contract, there must be a definite offer and an unequivocal acceptance." *Tinucci v. R.V. Evans Co.*, 989 S.W.2d 181, 184 (Mo. App. E.D. 1998). "[N]egotiations or preliminary steps towards a contract do not themselves constitute a contract." *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo. App. W.D. 1995). "Any acceptance that includes new or variant terms from the offer amounts to a counteroffer and a rejection of the offer, which becomes open again only when renewed by the offeror." *Tinucci,* 989 S.W.2d at 184.

---

[4] Missouri Court Rules (2013).

"Where the evidence regarding a contract is conflicting or is capable of more than one inference, the question raised is one of fact for the trier of fact to determine." ***Id.*** [5] What a party subjectively intended is not the controlling factor in finding that there was an acceptance, instead "[t]he standard is what a reasonably prudent person would be led to believe from the actions and words of the parties and this is a question to be resolved by the trier of fact." ***Silver Dollar City, Inc. v. Kitsmiller Constr. Co.***, 931 S.W.2d 909, 914 (Mo. App. S.D. 1996).

### Analysis

Plaintiff's first point contends the judgment's declaration that the lease had not been modified was against the weight of the evidence because "the parties exchanged letters that contained an offer, counter-offer and acceptance[,]" Defendant "instructed [its] attorney to draft a written lease modification according to the terms the parties agreed on, and [Defendant] accepted the modified rent amount for four weeks." Plaintiff's second point contends that the weight of the evidence was that the lease was "at least partially modified" as there was "an unambiguous, precise and definite agreement" "[o]n at least two, if not three, of the four matters the parties were negotiating on[.]" Because both points challenge the trial court's factual finding that the parties never

---

[5] Plaintiff asserts that the standard of review to be applied in this case is *de novo*, quoting a statement in ***State v. Nationwide Life Ins. Co.***, 340 S.W.3d 161, 189 (Mo. App. W.D. 2011), that "[t]he trial court's determination that the letters formed a contract is a conclusion of law we review *de novo*." There, the court was considering whether a letter constituted an offer. ***Id.*** The authority cited in the opinion for the statement quoted by Plaintiff was "***Crestwood Shops, LLC v. Hilkene***, 197 S.W.3d 641, 656 (Mo. App. W.D. 2006) ('Interpretation of a contract is a question of law and is subject to *de novo* review.')." ***Id.*** Plaintiff's proffered authority is distinguishable. Here, the parties' dispute is not over the terms of a contract; the question is whether the parties reached an agreement to modify their lease based on a particular set of terms -- a question of fact for the trial court to resolve. In ***Tinucci***, the parties disputed whether a sentence in a letter revived a previously rejected offer. 989 S.W.2d at 184. The Eastern District regarded this as "a genuine issue of material fact[,]" reversed summary judgment, and remanded the case. ***Id.***

reached an agreement to modify the lease, we resolve the appeal by addressing only that common, dispositive issue.

Plaintiff argues that a contract is generally construed so as to find it valid, citing *Kansas City v. Kansas City Transit, Inc.*, 406 S.W.2d 18, 22 (Mo. 1966) (if a contract is open to two constructions -- one legal and the other illegal -- the legal construction is preferred); *Haeffner v. A.P. Green Fire Brick Co.*, 76 S.W.2d 122, 126 (Mo. 1934) (plaintiff could not forfeit a lease by refusing payment when the lease permitted a grace period for payment); and *Citizens Trust Co. v. Tindle*, 199 S.W. 1025, 1029 (Mo. banc 1917) (sureties are bound by their agreement "except as to such parts as may be illegal"). The cited cases are inapposite because each addressed a situation in which one of the parties to an existing contract was advancing a construction of its terms that would essentially render it invalid or meaningless; they do not address the question of whether an agreement was reached. The disputed fact question in the case at bar is whether the parties ever mutually agreed to be bound by a set of provisions modifying the lease.

It must be remembered that "[t]he mere fact that parties contemplate a formal written draft of their agreement at a later time is not sufficient in itself to demonstrate that they did not intend to be bound at the time of their original agreement." *Hunt v. Dallmeyer*, 517 S.W.2d 720, 724 (Mo. App. St.L.D. 1974).

> *Where parties negotiate an agreement and clearly express an intention not to be bound until a formal contract is executed, such intention must be respected.* But, where the parties fail to state that their negotiations are to be regarded as merely contingent upon the final execution of a written agreement, the question of whether they intended to be bound by anything less than such a contract is sometimes a rather difficult question. It is resolved by ascertaining whether the parties actually looked upon the formal writing merely as evidence of their preliminary agreement, or as an operative fact without which they intended not to be bound.

9

***Shapleigh Inv. Co. v. Miller***, 193 S.W.2d 931, 937 (Mo. App. St.L.D. 1946) (emphasis added).

In ***Shapleigh Inv. Co.***, the court went on to state that "[s]uch expressions in correspondence as 'mailing contract' or 'please forward contract,' or an acceptance 'subject to drawing contract' or 'pending issuance of formal contract,' have been held not to destroy the binding effect of the preliminary agreements." ***Id.*** (citations omitted).

> [A[lthough the parties did contemplate a formal writing, they did not expressly stipulate that they would not be bound until such instrument was executed. Therefore, it becomes a question of fact as to whether the parties intended the formal writing to be merely a memorial of their agreement arrived at through their correspondence, or whether they intended that there should be no contract until the execution of the formal extension agreement.

***Id.*** The fact that the parties had discussed that an attorney would "'draw up the necessary extension papers'" was "merely a circumstance to be considered along with all the other evidence in the case which tend[ed] to throw light upon the intention of the parties." ***Id.*** In addition to the letters, the other circumstances were that "[t]he loan had been extended several times, in previous years, without the execution of a formal document[,]" and both parties began performing the agreement "without either party insisting that a signed agreement was necessary." ***Id.*** The court affirmed the trial court's judgment, which found "that the parties had by their letters . . . reached an agreement to extend the loan" in question. ***Id.*** at 936, 938.

Here, the letters sent on behalf of Defendant each stated that Defendant's lawyer would draft an amendment to the lease. Mr. Smith's first letter in response to Dr. Hynes's November 2011 request for a modification of the lease specifically stated:

10

> Please let us know if these changes to the lease are acceptable to you so that we may have our attorney draft an amendment as soon as possible. *We would require the amendment be executed before we make any of the changes*, therefore time is of the essence.

(Emphasis added.) Mr. Smith's second letter on behalf of Defendant to Plaintiff expressed points of agreement between the parties, but it also provided: "I will forward this letter to our attorney and have him draft an amendment to the lease and get it to you for execution as soon as possible." In response, Dr. Hynes sent a draft lease on behalf of Plaintiff to Defendant. Mr. Smith replied that while it appreciated Dr. Hynes's attempt, Defendant's attorney was "working on the lease amendment according to the terms detailed in our letter dated 12/9/11 (attached). You indicated at that time that our terms were satisfactory. Once [our attorney] has a draft, I will forward it to you for your review."

When Defendant subsequently sent its attorney-drafted lease modification to Plaintiff, the letter accompanying it stated that "[a]fter consulting with our attorney, these are the changes we will agree to. Please review and let me know if you have any questions. Also, please remember that until we get this amendment signed, we expect the terms of the current lease to remain in effect." When Dr. Hynes received the draft, he "immediately" responded that it was "not acceptable."

The trial court could credit and rely on Defendant's repeated statements, through Mr. Smith, that Defendant's lawyer would be drafting any modification to the lease and that Defendant would require that "the amendment be executed before we make any of the changes" as evidence demonstrating Defendant's intent not to be bound until a formal amendment prepared by its attorney had been executed by the parties. *See Shapleigh Inv. Co.*, 193 S.W.2d at 937. Mr. Smith's statement in his second letter that Defendant

11

would "have [its attorney] draft an amendment to the lease and get it to you for execution" was consistent with his prior statement that such an event would have to take place before Defendant would be bound by any new agreement.

Plaintiff ineffectually argues that "[Defendant] put on no evidence regarding the intent of the parties." A party is not required to "present contradictory or contrary evidence" to contest an issue; such a contest may be made by cross-examining witnesses, arguing a lack of witness credibility, or "by pointing out internal inconsistencies in the evidence." *White v. Director of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010). And when facts relevant to an issue are contested, we "defer[ ] to the trial court's assessment of the evidence." *Id.*

Here, Defendant contested Plaintiff's evidence of mutual assent by cross-examining Dr. Hynes, offering its own exhibits, and arguing to the trial court that the evidence proved that no agreement had been reached. We therefore defer to the trial court's determination of this contested factual issue (assumed in accord with the result found): that Defendant "clearly express[ed] an intention not to be bound until a formal contract [was] executed[.]" *See Shapleigh Inv. Co.*, 193 S.W.2d at 937.

Plaintiff makes several arguments based on evidence it believes supports its position that a mutual agreement to modify the lease had been reached. For instance, it argues that Defendant "accepted rent at the modified rate of $450.00 per week for January, 2012." But Plaintiff does not articulate why the probative value of the aforementioned statements in Mr. Smith's letters pales in comparison to this particular evidence. Regarding Defendant's acceptance of the checks, "[t]here is no accord and satisfaction unless payment is tendered on the *express* condition that it be accepted in full

12

satisfaction of the claim." ***Cranor v. Jones Co.***, 921 S.W.2d 76, 81 (Mo. App. E.D. 1996). "The condition that acceptance means full satisfaction must be made clearly apparent to the creditor. Whether an accord and satisfaction has been reached is generally a question of fact." ***Id.*** (citation omitted).

Here, nothing on the face of the checks indicated that the payments were tendered in full satisfaction of the weekly rent due.[6] The trial court was entitled to view any acceptance of the checks by Defendant as an attempt to mitigate its damages, especially since Mr. Smith had rejected Dr. Hynes's attempt to draft the lease amendment and Dr. Hynes informed Mr. Smith that the lease amendment provided by Plaintiff was "not acceptable." Plaintiff also insists that because "the rent checks were written by [Defendant]'s agent and accepted by the same [Defendant]'s agent . . . . [this amounted to a]nother outward manifestation of an agreement by [Defendant]." The trial court was not obligated to view the evidence in this manner. It could just as easily have determined (and apparently did) that Defendant's agent was simply accepting as much money as Plaintiff was willing to pay at that time -- that Mr. Fagan (as Defendant's agent) knew that Defendant had conditioned its acceptance of any lease amendment upon the execution of a formal lease modification agreement drafted by Defendant's attorney.

The trial court, as a matter of fact, determined that the parties did not agree to modify the lease. Plaintiff has failed to "demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief

---

[6] Presumably, Plaintiff would have also offered into evidence copies of the backs of the checks if they would have provided support for Plaintiff's position. Whether or not they were offered at trial, they were not included in the record on appeal. As a result, we presume that they would not support Plaintiff's argument. *Cf.* ***Barnett v. Rogers***, 400 S.W.3d 38, 49 (Mo. App. S.D. 2013) (court presumed that exhibits which were not a part of the record on appeal were unfavorable to appellant).

in that proposition." ***Houston***, 317 S.W.3d at 187. Plaintiffs' points are denied, and the judgment of the trial court is affirmed.

DON E. BURRELL, J. - OPINION AUTHOR

JEFFREY W. BATES, P.J. - CONCURS

MARY W. SHEFFIELD, J. - CONCURS